DOROTHY B. SEMAN, RESPONDENT, v. MEL ILLGENFRITZ, APPELLANT.*

Kansas City Court of Appeals. February 11, 1929.

*Corpus Juris-Cyc References: Bills and Notes, 8CJ, section 1136, p. 867, n. 8; section 1275, p. 970, n. 60; section 1299, p. 995, n. 70; section 1397, p. 1077, n. 43; Contracts, 13CJ, section 408, p. 466, n. 98; Husband and Wife, 30CJ, section 29, p. 516, n. 46; section 847, p. 1065, n. 44; Parent and Child, 46CJ, section 35, p. 1258, n. 6; Statutes, 36Cyc, p. 1240, n. 81; Trial, 38Cyc, p. 1511, n. 23.

*Shain & O'Bannon* for appellant.

*Barnett & Barnett* for respondent.

BLAND, J.—This is a suit on a promissory note reading as follows:

"Sedalia, Mo., May 26, 1911,

"$7500

"On demand after date I promise to pay to the order of Dorothy Bell Illgenfritz

"THE THIRD NATIONAL BANK of Sedalia, Missouri, Seven thousand five hundred ——— Dollars, for value received, negotiable and payable without defalcation or discount, with interest from ——— no interest.

"MEL ILLGENFRITZ.

"No.——————— Due———————"

The material parts of the petition in this case read as follows: "On May 26, 1911, defendant, for value received, made, executed and delivered to plaintiff defendant's promissory note, dated May 26, 1911, whereby on demand, after date, he did promise to pay to the order of plaintiff $7500. No part of said note has been paid."

The answer, so far as material to the issues presented here, admits the signature upon the note to be that of defendant, but states that defendant "never delivered said purported note to the plaintiff, nor authorized its delivery to the plaintiff, and that said purported note is without consideration and that there has been an entire failure of all consideration; that the defendant now repudiates said note and prays the court by its judgment and decree to declare said note null and void and to discharge this defendant with his costs." The reply "denies that defendant did not deliver the said note, but states that the same was delivered for plaintiff to plaintiff's mother, who at that time, was the natural guardian of the plaintiff, and that the plaintiff's mother accepted the delivery of said note for the plaintiff, and that said note was delivered for the plaintiff to plaintiff's mother by the defendant. Plaintiff denies that said note is without consideration and denies that there has been any failure of consideration for said note."

There was a verdict and judgment in favor of plaintiff in the sum of $7500 and defendant has appealed.

The principal controversy at the trial was as to whether there was a legal consideration for the note. The evidence does not show any consideration given by the payee of the note to the maker, but plaintiff relied upon an agreement between her father (the defendant) and mother for the consideration for the note.

The evidence shows that plaintiff who is now over twenty-one years of age, and married, is the daughter of defendant and Dorothy W. Illgenfritz (now Smith); that prior to and on the 26th day of May, 1911, she was living with her parents in Sedalia; that there had been frequent quarrels and separations between her parents, her mother at times leaving the defendant.

In reference to the facts surrounding the execution of the note plaintiff's mother testified that prior to and on May 26, 1911, she had made up her mind to leave the defendant, knowing "that the break had come;" that she was a graduate of a Normal School and was capable of supporting herself but felt that plaintiff, her child, was entitled to something for her support, if she took the child, who was then five years of age; that the suggestion that the note be given was made by her then husband, the defendant; that defendant had told her before that he would not do anything for her, but that he would for the plaintiff; that on the date the note was executed he came out to the house with the note in blank and wanted the witness to stay and became angry and told her to make out the note, which

the witness did, she being the author of the note except that defendant inserted the words therein "no interest." It seems that defendand at that time was without means, but that his father was a wealthy man, and plaintiff's mother took the note believing that the defendant would come into an estate at some future time.

Plaintiff's parents were not separated at the time the note was executed, and the testimony as to whether there was any immediate separation contemplated at that time is somewhat obscure. Plaintiff's mother testified, that as a part of the agreement at the time the note was signed, she was to support herself and the plaintiff; that "I relieved Mr. Illgenfritz from legal responsibility for her and me;" that the understanding was that the witness was to hold the note and give defendant another trial, and if he did not do any better the note was to go to her for plaintiff's support. The mother was asked whether it was contemplated that they should live together when the note was signed and she stated, "I do not know, I could not say, but before a great deal of time Mr. Illgenfritz talked me right back into staying as he had many times before;" that there followed a reconciliation, and that she continued to live with him until September, 1912. However, it is immaterial as to whether or not there was an immediate separation in contemplation at the time the note was given, for the reason that the undisputed testimony shows there was no separation but an immediate reconciliation. The law applicable to the situation is the same whether there was contemplated an immediate separation or not, so long as there was none at the time. This is a matter that will be hereinafter discussed.

Plaintiff's mother further testified that in September, 1912, she finally left the defendant and went to California taking plaintiff with her. Before she left she authorized an attorney in Sedalia to file suit for divorce for her, which was done. In the petition indignities were alleged as grounds for the divorce, the petition stating that the defendant had been guilty of gambling and drinking and had become so quarrelsome and abusive to plaintiff therein that her life had become unbearable; that defendant cursed and abused her and on the 26th day of August, 1912, told her to leave home.

The witness further testified that after she arrived in California with her daughter the defendant came to see her seeking a reconciliation; that he and the witness reached an understanding to the effect that defendant was to return to Sedalia for one year to "see what he could and would make out of himself;" that she was to take care of the plaintiff and herself and he was to be relieved of any obligation for plaintiff's support. She testified that if at the end of the year "he had behaved himself I probably would come back;" that the note entered into this agreement; that it was agreed that the witness was to hold the note "while he was trying the reformation period;" that she was to support herself and the plaintiff for

that year. In pursuance to that agreement the witness wired her attorney in Sedalia not to file the divorce suit, but the same having already been filed, it was dismissed. The witness further testified that "had I come back, had he fulfilled his promise that he assumed, the note probably would have been returned to him, but I never had occasion to come back," because defendant filed in Sedalia, a suit for divorce against her. The evidence shows this suit was filed September 6, 1913; that the grounds alleged in the petition for divorce were desertion, and that the divorce was obtained on an order of publication against the defendant therein. Plaintiff's mother testified that she continued to support herself and the plaintiff for a period of three years, at which time defendant's father began to contribute to the plaintiff's support; that defendant was never called upon by the witness to support either herself or plaintiff. Plaintiff was married to one Smith in the State of California about four years after the final separation.

Defendant's version of these transactions was that he and his wife had had some quarrels before the note was given; that he did not remember whether they were having any trouble at the time, but that he voluntarily delivered the note to his wife made out to his daughter because he had no money at the time and wanted to make provision for her education when she grew up; that the consideration for the giving of the note was love and affection for his daughter; that he had no reason to apprehend that there was going to be any separation at the time of its execution; that he gave his wife the money with which to go to California; not knowing that she was separating from him; that relations between them at that time were good; that after she left for California he found out that she was dissatisfied and he went out to California and attempted to effect a reconciliation; that he went out there on two occasions; that his wife told him she would either come back or he could go out there; that in about three months thereafter she instructed him to file suit for divorce against her. Defendant further testified that there was no talk in California about the note, or concerning the custody of the child; that he did not remember whether there was any suggestion that he should do anything for the plaintiff at that time; that he thought his wife would come back.

Defendant insists that the court erred in refusing to give his instruction in the nature of a demurrer to the evidence at the close of the entire case. In this connection defendant insists that the agreements had between himself and his wife were void as against public policy and furnished no consideration for the giving of the note; that the only consideration for the note was love and affection and that such a consideration is not sufficient to afford a legal consideration for the giving of a note. There seems to be no contention between the parties

that if the note was given for the reason assigned by the defendant in his testimony there was no valid consideration for it. [See, also, 8 C. J., page 241.] Defendant insists that as the agreement had between himself and his wife on May 26, 1911, was not in contemplation of an immediate separation of the parties and even if it were, as there was an immediate reconciliation, there was no consideration for the note or that the consideration failed. It has been often held that agreements for separation had between husband and wife will not be held good unless the separation has already taken place, or is to take place immediately upon the execution of the agreement, and continued cohabitation will avoid the agreement. The contract also will be considered as rescinded, even if there has been a separation, if the parties afterwards effect a reconciliation and cohabit or live together as husband and wife by mutual consent. [Johns v. Johns, 204 Mo. App. 412; Harrison v. Harrison, 201 Mo. App. 465; Banner v. Banner, 184 Mo. App. 396; Fisher v. Clopton, 110 Mo. App. 663; Speiser v. Speiser, 188 Mo. App. 328, 338; 30 C. J., pages 1066, 1067.] We therefore, conclude that there was a want of a legal consideration in the giving of the note if its validity depends upon the agreement had on May 26, 1911.

However, it is well established that an agreement had between husband and wife after separation is valid, if it is reasonable and fair to the wife. [Speiser v. Speiser, supra; Harrison v. Harrison, supra; Winter v. Winter, 16 L. R. A. (N. S.), 710 (N. Y.).] It may be inferred from the testimony that there was a final separation had between the defendant and his wife when she went to California, and at the time the alleged agreement entered into between them in that State was made. Contrary to the contention of the defendant we think that the agreement made there is not void as being against public policy for the reasons assigned by him. We are not here called upon to pass upon the question as to whether that agreement was reasonable and fair to the wife, for the reason that she has not repudiated it. Defendant was bound in law to support both his wife and his child, and whether there was any consideration for the promise of his wife to give up her right of maintenance we need not say, as the case was not tried upon any such theory, nor is any such theory advanced in this court. The agreement, if there was any consideration for it, was sufficient to support a consideration for the note. [See, also, 46 C. J. 1260.] It is contended by the defendant that the California agreement, as testified to by Mrs. Smith, is contrary to public policy, "in that the transaction as narrated shows that such an agreement would but promote a final separation and a divorce in the future;" "the note actually under the wife's testimony stood as a bonus to her not to assume marital relations."

It has been well said that "the continuation of the marital relation is always regarded, in the law, as a relation to be promoted and maintained. It frowns upon agreements for its destruction, and smiles upon agreements which restore its relation when interrupted." [Sommer v. Sommer, 84 N. Y. Sup. 444, 446.] Under this theory agreements which have for their object the restoration or resumption of marital relations after separation has taken place are upheld. [13 C. J. 466.] In those cases, however, the resumption of marital relations is a part of the contract. We have not been able to find any case construing an agreement, such as was made in California between defendant and his wife, but think under the policy of the law in reference to such agreements that unless it tended to prevent a reconciliation it ought to be recognized as valid. Had a reconciliation been in contemplation prior and up to the time the negotiations for the agreement were started we would be inclined to hold the agreement void. If the note had been given directly to defendant's wife and there had been a reconciliation in contemplation at the time last mentioned, then the wife would have been put to a choice of holding on to the note or returning to her husband. Such an agreement would be calculated to prevent a reconciliation. The willingness of the mother to surrender her right to support for the benefit of the daughter shows that the former's interest in the matter was almost as great as had she been the payee in the note.

However, we think the mother's testimony, at least by inference, tends to show that there was a final separation had between herself and the defendant at the time he came to California. If no reconciliation was in view prior to and at the time the negotiations were commenced in California it naturally follows that the possible reconciliation there talked of was a part of the agreement itself. In other words if the agreement had not been made, there would not have been any hope of reconciliation, as there had been a permanent separation. We do not think there could be any question but that the agreement would not have been against public policy on the grounds assigned by defendant if no reconciliation had been mentioned, that is, had it been agreed that the note should be held by the wife for the support of the plaintiff, defendant being free from support of his wife or the plaintiff. The agreement actually made was between husband and wife, who were at the time separated, and even though the agreement as a whole tended in a way to prevent a reconciliation, that is, gave the wife the choice of returning to her husband or keeping the note, it must not be forgotten that there is an inference in the evidence that there would not have been any agreement whatever looking toward a reconciliation had it not been for the making of the contract in the terms it was made. Therefore, the whole circumstance tended to bring about a reconciliation, if anything. It

resulted in the divorce suit being dismissed and a consideration by the wife of the question of reconciliation, and as before stated, if there had not been the agreement, there would have been a final separation without any reconciliation being considered.

However, we think that the defendant's contention that there is a fatal variance between the allegations of the petition and the proof is well taken. It will be noted that the petition does not allege the execution of the note on a day different than the evidence shows the note was dated (see 1 Daniel on Neg. Insts. (6 Ed.), sec. 85), but it is alleged that the note was dated and executed on the same day, i. e., May 26, 1911, whereas, if there was any valid note in existence at all it came into force and effect when the agreement was made in California in 1912. Undoubtedly it was fatal variance to allege the execution and the date of the note as May 26, 1911, and prove that it was executed in the latter part of the year 1912. [31 Cyc. 711; 8 C. J. 970; Grant v. Winn, 7 Mo. 188.] However, we disagree with the defendant's contention that the petition should have pleaded the nature of the consideration. [8 C. J. 867.]

At another trial plaintiff's instructions A, B, C and F should not be given. Plaintiff's instruction No. A directs a verdict and is misleading, in that, the jury might find that the delivery of the note under the agreement had on May 26, 1911, afforded a sufficient consideration to support the note, and the definition of the word "consideration" contained in the first paragraph of plaintiff's instruction F does not make the matter any clearer. The same objection pertains to plaintiff's instruction B. Plaintiff's instruction C is merely an abstract proposition of law. Plaintiff's instruction F is misleading and does not make plain to the jury that the separation therein mentioned was a permanent rather than a temporary separation. There is some slight evidence on the part of the defendant tending to show that there was no permanent separation when his wife testified that the California agreement was made. If at the time of this agreement there was merely a temporary separation with a prospect of reconciliation, then we think the agreement would be void, as tending to prevent a reconciliation.

We think the court should have given defendant's instruction No. 8. It sought to submit that the contract between the defendant and his wife, while they were living together as man and wife, could not be considered as a consideration for the note. We do not find that this matter was submitted in any of the instructions given. We find no error in the refusal of the other of defendant's instructions. Defendant's offered instruction No. 1 is misleading on the question of the burden of proof. The burden of proving lack of consideration was on the defendant. The note, on its face, purports to be for a consideration. Plaintiff's offered instruction No. 5 sought to submit

a question of law to the jury. Defendant's instruction No. 7 sought in part to submit to the jury that contracts between husband and wife designed to prevent divorce are unenforcible. From what we have said this is not the law. Under this instruction, even though the California agreement was one tending to prevent a divorce, the jury could find there was no consideration if it did, regardless of the other facts. If the instruction had merely submitted that contracts looking toward the avoidance· of a separation were unenforcible, and that the contract made between the defendant and his wife on May 26, 1911, was one to prevent a separation, then another question would have been presented, but the instruction submits in the disjunctive the matter of a contract to prevent a divorce and one to avoid a separation, and there is no way of telling whether that part of the instruction relative to the prevention of a divorce refers to the agreement of May 26, 1911, or the California agreement.

Some controversy has arisen as to whether the California agreement is to be construed in accordance with the law of California or of that of this State. In the absence of a pleading of the law of California the agreement is governed by the law of this State. [Mathieson v. St. L. & S. F. R. R., 219 Mo. 542] The case of Egger v. Egger, 225 Mo. 116, 149, involves a different situation.

The judgment is reversed and the cause remanded. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.