247 S.W.2d 640 (1952)
JOHNS
v.
McNABB.
No. 42438.
Supreme Court of Missouri, Division No. 2.
March 10, 1952.
Rehearing Denied April 14, 1952.
Russell N. Pickett, Eugene E. Andereck, Phil Hauck and Pickett & Pickett, Trenton, for plaintiff-appellant.
L. E. Atherton, Milan, for respondent.
BARRETT, Commissioner.
Formerly, 1936 to 1949, the plaintiff and the defendant were husband and wife. The plaintiff wife became enamoured of her neighbor, Virgil Johns, and in June 1949, upon the petition of the husband, the McNabbs were divorced. Since the divorce the wife has married Johns and the *641 husband has married another. At the time of the divorce the plaintiff and the defendant owned a 200 acre farm in Sullivan County as tenants by the entirety of the approximate value of $14,000, and there was personal property which the trial court found to be of the value of $3,504.50. Prior to the husband's suit for a divorce the parties entered into a written contract in which the wife agreed, in the event of a divorce, to relinquish and transfer to the husband all her interest in the real estate. On the day the contract was signed the husband and wife executed a warranty deed conveying the farm to the husband. After the divorce the wife also executed a quitclaim deed conveying the 200 acre farm to the husband. About a year after the divorce and after the second marriages the wife instituted this action against her former husband. The purpose of this action is to cancel the contract and set aside the deeds upon the grounds of fraud, duress and lack of consideration, and to partition the real estate. The wife also claimed that they were tenants in common of personal property of the value of $15,000 and she sought an accounting and partition of the personal property. Upon the counts relating to the real estate the trial court found "the issues for the plaintiff," canceled the contract, set aside the deeds and ordered partition of the land. As to the enumerated personal property of the value of $3,504.50 the trial court found the issues for the defendant. The former wife appeals from the judgment relating to the personal property and the former husband appeals from the judgment relating to the real estate.
As to the real estate, counsel for McNabb, the former husband, insist that there was no conflict in the testimony and that there is no evidence to support the court's finding and decree canceling the contract and setting aside the deeds. He also insists that there is no evidence from which it could be found that Mrs. Johns had any interest in the claimed personal property, hence that phase of the judgment should be affirmed. On the other hand counsel for Mrs. Johns insist that there was evidence in support of her claim to the personalty and that the court erred in denying her claim. As to the finding and decree with respect to the real estate it is urged that this court is bound by the trial court's finding and that only questions of law are reviewable upon this appeal. Essentially, however, this is a suit in equity and this court is charged with the duty of reviewing the cause anew, of reviewing the evidence and determining its weight and value, with deference to the findings of the trial court. Thomason v. Beery, 361 Mo. 424, 235 S.W.2d 308, 309; Gardine v. Cottey, 360 Mo. 681, 693, 230 S.W.2d 731, 18 A.L.R.2d 1100.
In our view it is unnecessary, with reference to the real estate, to particularly consider or emphasize any questions concerning fraud or duress in the execution of the contract and deeds. It is doubtful that there is any evidence of fraud and the evidence of duress is largely dependent upon the inferences and implications to be drawn from the circumstantial evidence, the mental distress of the parties and their exigencies during the execution of the contract, the procurement of the divorce and the subsequent execution of one of the deeds. The principal question relative to the real estate, the one briefed and argued here, and the one determinative of this phase of the cause, is whether there was any consideration for the contract and deeds.
After the husband became aware of the relationship between his wife and Johns and their clandestine meetings there were arguments and discussions as to divorce, separation and reconciliation. The husband had consulted a lawyer and on the 7th day of April 1949 the husband and wife appeared at his lawyer's office and the lawyer, after making notations as to what the parties desired in their separation agreement, drafted the written contract which the parties then executed. The contract recites their separation and desire to settle their property rights. It then describes the 200 acre farm which "the parties own as tenants by entirety" and stipulates that the wife "agrees to relinquish all of her right, title and interest" in the property and for that purpose agrees to execute *642 and deliver a warranty deed contemporaneously with the execution of the contract, subject to an indebtedness of $800. She also agreed, in the event of a divorce to either party, to execute and deliver to her husband a quitclaim deed to the property. By the terms of the contract the wife was to have as her absolute property "the parties' living room suite of two pieces, davenport and chair * * * 100 hens to be taken by her from the parties' flock of chickens at any time after June 1, 1949." The husband was given the care and custody of their infant children, Sandra Sue, age eight years, and Donald Ray, age three years, and the wife "shall have the right to visit said children and to have said children visit her at reasonable and proper intervals," on a half time basis when they were not in school. The last paragraph of the contract recites that "this is a full and complete property settlement between the parties of all their property rights, including release of dower and alimony, growing out of their status as husband and wife, so that neither party shall hereafter have any claim against the other of any kind or nature by reason of being husband and wife." On the same day the husband and wife executed the warranty deed, "in consideration of one dollar and other valuable consideration," by which they conveyed all interest in the land to the husband, Cleo McNabb.
After the execution of the contract and deed and after a frustrated attempt at reconciliation it was finally determined that the husband and wife would separate. The wife had no grounds for a divorce, and some time after the execution of the contract the lawyer filed a suit for a divorce for the husband and the divorce was granted on the 17th day of June 1949. On the same day the wife executed the previously prepared quitclaim deed conveying all her interest in the 200 acre farm to her former husband. The divorced wife and Johns were married in November 1949, the husband was married again in February 1950 and the former wife instituted this action the following April.
As to the consideration for the contract, it must first be borne in mind that upon the granting of the divorce the husband and wife became tenants in common of the 200 acre farm they had previously owned as tenants by the entirety, each owned an undivided one half interest in the land as they both well knew and were advised. Joerger v. Joerger, 193 Mo. 133, 91 S.W. 918; Russell v. Russell, 122 Mo. 235, 26 S.W. 677. By reason of the husband's being granted a divorce the wife lost the rights in his property accruing to her by reason of the marriage, Mo.R.S.1949, §§ 452.090, 469.200, V.A.M.S., but her interest in the estate by the entirety was not dependent on her good conduct or affected by her misconduct. 41 C.J.S., Husband and Wife, § 34, page 461. It was the husband's view that his wife's principal concern was with obtaining her freedom that she might marry Johns, and to compensate for the injury she had done him and that he might more readily support the children she was willing to transfer to him her interest in the farm, although these intangible imponderables are not mentioned in the written agreement. It is obvious from the contract as written that the one half interest in the real estate, worth about $7,000, was the substantial tangible consideration and real value in the contract. As to the consideration in general, from the wife's point of view, the husband testified that the davenport and chair, purchase from the sale of eggs and chickens, belonged to her. Aside from this item and some personal effects he denied that she had any interest in any personal property or that they jointly owned any personalty except 190 hens, and it was 100 of these or their value that she received under the provisions of the contract. In short the only tangible property transferred to her or recited as consideration for the contract, except the $1 which he says he subsequently paid and which she says he did not pay, was already her separate property. Up to this point, under the contract, the wife has not received anything she would not have received had there been no contract. Egger v. Egger, 225 Mo. 116, 144, 123 S.W. 928; In re Wood's Estate, 288 Mo. 588, 601, 232 S.W. 671. The other recited consideration, with which the lawyer *643 said she was principally concerned, was the right to see her children and have them visit her on a half time basis when it did not interfere with their school attendance. As to this latter subject and the care and custody of the children, the wife's misconduct did not necessarily deprive her of her rights with respect to them, and their welfare being the principal consideration, it was not possible for the parties to irrevocably or irretrievably contract with respect to them and the wife's reasonable right to see them or have them visit her. Knepper v. Knepper, 139 Mo.App. 493, 122 S.W. 1117; Meredith v. Krauthoff, 191 Mo. App. 149, 177 S.W. 1112; 2 Page, Contracts, Sec. 934, p. 1652. Under the terms and provisions of the written contract and the execution of the deeds pursuant to the contract there was no mutual relinquishment of rights or transfers of interests of property, North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061; McBreen v. McBreen, 154 Mo. 323, 55 S.W. 463; Hall v. Greenwell, 231 Mo.App. 1093, 85 S.W.2d 150, or, in short, of any consideration from the husband for the wife's agreement and deeds. Speiser v. Speiser, 188 Mo.App. 328, 175 S.W. 122; annotation 5 A.L.R. 823; 42 C.J.S., Husband and Wife, § 596, page 175.
The appellant husband urges, nevertheless, that there was consideration for the contract and deeds not mentioned in the written agreement and that he was entitled to and did prove that consideration and, therefore, the trial court erred in canceling the contract and setting aside the deeds. It is his position that he had a cause of action against Johns for alienating the affections of his wife and that the true consideration for the contract between himself and his wife, resulting in a third party beneficiary contract, Semon v. Illgenfritz, 223 Mo.App. 546, 15 S.W.2d 912, was his agreement with his wife, or his promise to her, that he would not and did not, within the period of limitations, sue Johns in consideration of her transfer to him of her one half interest in the farm.
In this connection we lay to one side any questions concerning the substantive law of contracts, including the parol evidence rule, and whether in the unique circumstances urged there was or could be such a valid third party beneficiary contract. We assume, solely for the purposes of this opinion, the inapplicability of the parol evidence rule and the validity of the contract as urged, and consider only whether the evidence so definitely proves the consideration relied upon that it can be said that the trial court erred in finding this issue against the husband. It is our conclusion in reviewing this case anew, in passing upon the weight and value of the evidence, that the appellant's evidence does not so definitely and clearly establish his forbearing suit against Johns as the true consideration for the contract that this court can confidently find the issue contrary to the way the trial court must have found it.
The husband said that his wife's principal concern was her freedom and her right to see the children and after their proposed settlement had been discussed at length she wondered how it would all "read in the contract" and she said that they would have the lawyer draw up the contract and "see how about the visiting privileges read and if agreeable with me I will sign the papers today and leave things as they are in the house with the kids if you promise not to sue Virgil Johns, so I promised her I would." He said that they got ready to sign the contract "and she says and he is supposed not to sue Virgil Johns too" and "I says no, I won't sue him." The wife had not consulted a lawyer and she says that her husband told her that he had consulted a lawyer and had found that he could get a divorce and she could not, that he could take the children from her, take all the property and put her and Johns in jail. She denies that McNabb's suing Johns was even discussed and positively testified that the subject was in no way a part of the contract. So thus far there is a direct conflict in the testimony of the parties. There are other circumstances, however, strongly corroborative of the view that McNabb's promise not to sue Johns did not constitute any part of the consideration for this contract. The contract was drawn by the husband's careful *644 and competent lawyer and forbearing suit against Johns is not mentioned. Had the question been considered as a part of the contract of separation and settlement it is inconceivable that so conscientious a lawyer would have omitted it from the contract. The lawyer said that "the main thing she was interested in was getting to have the children half of the time, she stated she was not interested in the property, she did not want anything up there, far as the farm was concerned, and the property, she said that he would have to support the children and have to have some means of doing it, and she loved her children and she knew he would go ahead and support them and make a home and was not wanting to claim those things." As to Johns and her husband's suing him the lawyer said, "I don't know how she put it, but she indicated that she made up her mind she would not give him up or something to that effect, and when we drew up this contract when they gave me the notes what they wanted to go in the contract, she made the remark she says now I want it understood now that I am signing over this land and giving him this property, that he is not going to sue Virgil.
"Q. What if anything did Cleo say? A. I don't remember what he said that he would but all right I don't remember he said anything." In this state of the record we must find as the trial court did that McNabb's forbearing suit against Johns was not a part of the consideration for the contract and deeds, and that they were properly canceled and set aside for lack of consideration. In re Wood's Estate, supra; Speiser v. Speiser, supra.
Likewise as to the former wife's appeal and claim to the personal property, it is indeed significant, except for the living room suite and chickens, that the subject was not mentioned in the separation agreement purporting to dispose of and settle all their property rights. As indicated she lost any marital rights she may have had in his property and she had no other rights in his separate personalty. State ex rel. George v. Mitchell, Mo.App., 230 S.W.2d 116; 41 C.J.S., Husband and Wife, § 18, page 414. She enumerated certain items of personalty which she said they owned jointly, although she said that there was no agreement between them as to its ownership and for the most part it was merely accumulated during their thirteen years of marriage. Admittedly, when they were married, his father gave him certain livestock. He positively testified, except for the chickens and living room suite, that she did not own or have any interest in the personal property, that they owned no such property jointly and that it belonged to him personally. And in reviewing the cause anew we cannot confidently say that the trial court erroneously adjudged this issue.
Accordingly the judgment of the trial court as to both appeals is affirmed.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.