OWENSBY v. CHEWNING et al., Plaintiffs in Error.

Division One, December 24, 1902.

Resulting Trust: SUFFICIENT EVIDENCE: DECLARATIONS OF DECEASED OWNER. Plaintiff's mother had a one-fifth interest in 250 acres of land and her share of the proceeds of the partition sale amounted to about the sum that her father bid for the eighty acres in suit, which was knocked off to and deeded to him. There was no evidence to indicate that the mother's share of the proceeds of the partition sale ever came to her, and the inference is that if it came to her at all it came through the agency of her husband and he afterwards stated to two disinterested witnesses that he had used it to pay for the land in suit. The statement to one of them, a neighbor, was made after the mother's death, when he was telling him that he was about to marry another woman, who is one of the defendants and mother of the others, and in that conversation he said his deceased wife's money had paid for the land, and because he was again about to marry he was going to town and make a will giving the property to plaintiff, the deceased wife's only child. *Held*, that, although the rule is that declarations that dead men are said to have made as to how they derived title to land must be received with great caution, this evidence fully meets the requirements of the law that evidence to establish a resulting trust must be clear, strong and unequivocal. *Held*, also, that although the means he proposed of giving the property immediately to his daughter by will would not have effected that purpose, yet that is not significant in view of the fact that he understood them to mean that he would convey the property to her.

Error to Scott Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*R. A. Kingsbury & Albert DeReign* for plaintiffs in error.

(1)   The evidence fails to establish a resulting trust.   "Testimony as to verbal admissions of persons since deceased is to be received with great allowance, and whenever it is attempted to prove a resulting trust by virtue of such admissions, the testimony must be clear, strong and unequivocal and leave no room for doubt in the mind of the chancellor as to the existence of such trust."   Johnson v. Quarles, 46 Mo. 423; Davis v. Green, 102 Mo. 184; Modrell v. Riddle, 82 Mo. 31; Woodford v. Stephens, 51 Mo. 443; Ringo v. Richardson, 53 Mo. 385.   (2)   Loose remarks purported to be made by the deceased, Owensby, to Huffstuttler and Hotchkiss, that the land belonged to plaintiff's mother, ought not to override the solemnity of the deed.   The evidence shows that the purchase price of the land was fifty-eight dollars; that Owensby paid twenty per cent of this amount on day of sale; that between the day of sale and the maturity of the note his wife Cordelia died. There is no evidence that Owensby ever became possessed of the proceeds of the sale belonging to his wife Cordelia.   There certainly was no evidence "clear, strong and unequivocal—so definite and positive as to leave no room for doubt in the mind of the chancellor." Modrell v. Riddle, 82 Mo. 31.   (3)   J. K. P. Chewning, husband of defendant, Laura Chewning, was a competent witness.   O'Bryan v. Allen, 95 Mo. 68.

*Marsh Arnold* for defendant in error.

The evidence in this case was brief, but conclusively justified the finding of the trial court.   It showed without contradiction that Thos. J. Owensby, who was the

husband of Cordelia Biggs, the mother of defendant in error, bought the land in controversy at a partition sale; that Cordelia had an interest in the land partitioned of equal or greater value than the interest bought by Owensby; that the said Owensby paid for the land thus bought with the proceeds of the sale of Cordelia's interest in the partitioned land; that Owensby had often in his lifetime declared that he had thus bought the land, that it belonged to his daughter, the defendant in error, and before his marriage to the plaintiff in error, Laura Chewning, had declared his intention to convey the land to his said daughter, the defendant in error. It is difficult to see where any citation of authorities is needed to establish a resulting trust in this case.

VALLIANT, J.—Suit in equity to establish a resulting trust in eighty acres of land in Scott county.

Plaintiff is the daughter of Thomas Owensby, now deceased. Her mother was Cordelia Owensby, the first wife of Thomas Owensby; Cordelia died in 1881, leaving the plaintiff her sole heir. After the death of her mother the plaintiff's father married the defendant, Laura, who, after his death, married defendant J. K. P. Chewning; the other defendants are the minor children of plaintiff's father by his second marriage.

The plaintiff's evidence was to the effect that a tract of land, about 250 acres, in which her mother had a one-fifth interest, was sold for partition in 1880, and at the sale plaintiff's father became the purchaser of the eighty acres in question for the price of $53, of which he paid twenty per cent down, and gave his note at twelve months for the balance secured on the land. The share of plaintiff's mother in the proceeds of the sale amounted to about fifty dollars. Two witnesses, testifying each as to separate occasions, stated that the plaintiff's father told them that he paid for the land with the money that came to his wife as her share of the proceeds of the partition sale. One of these witnesses stated that the conversation with him was upon the occasion when the plaintiff's father announced to

him that he was about to be married again and in that connection said that he intended before getting married to will the land to the plaintiff because it was bought with her mother's money. Plaintiff's testimony also showed that her father was a man of little means.

The testimony on the part of the defendants was that of one witness, the defendant J. K. P. Chewning, who testified that the share of each party to the partition suit in the proceeds of the partition sale, after costs and expenses were paid, amounted to only about twenty dollars; that the note given by Owensby for the deferred payment on his purchase came due about three weeks after the death of his wife and that he came to witness and asked a loan of thirty dollars, saying that on account of funeral expenses and a doctor's bill he desired to settle he was short and did not have money enough to take up his note on the land; he said he wanted the money to help him finish paying on the note, and witness loaned him that amount. The testimony of this witness as to the amount coming to each of the parties from the partition sale appears to be based on hearsay, but no objection was made to it on that ground.

Upon this evidence the chancellor found that one-half the purchase money paid by plaintiff's father for the land was the money of plaintiff's mother and that he took the title to that extent in trust for his wife and that on her death the plaintiff as her sole heir inherited that one-half. The decree was in plaintiff's favor for an undivided one-half interest in the land. From that judgment defendants appeal.

There is no difference between the counsel as to the law of this case; they differ only as to the probative effect of the evidence.

We appreciate and reaffirm what has heretofore been said by this court to the effect that testimony to establish a resulting trust must be clear, strong and unequivocal; that what dead men are said to have said should be received with great caution. The following cases cited in the brief of the learned counsel for appel-

lant fully sustain this view of the law. [Johnson v. Quarles, 46 Mo. 423; Woodford v. Stephens, 51 Mo. 443; Ringo v. Richardson, 53 Mo. 385; Modrell v. Riddle, 82 Mo. 31; Davis v. Green, 102 Mo. 170.]

But without relaxing any of the rigidity of those rules we think the evidence fully sustains the findings of the learned chancellor. That the plaintiff's mother had an interest in the land sold for partition is unquestioned; that her share of the proceeds of the sale amounted to about the sum that her father bid for the land he purchased at that sale is proven by the preponderance of the evidence. There is nothing to indicate that the share of the plaintiff's mother was ever paid to her; the inference would be that if it ever came to her it came through the agency of her husband, and his declarations were that he used it in payment for this land. These declarations were not vague or casual remarks but were made with deliberation and pointed. The declaration to one of the witnesses was on a solemn occasion when he was about to be married again, when doubtless he was reflecting on the consequences that his marriage might have on the rights of his daughter. It was when he announced to this friend his purpose of marrying and with that event in view and because of that event he said that he was going to will this land to his daughter because it was her mother's money that bought it. He was not then speaking of willing it in the future or at his death, but he expressed the purpose of then going to town and making her a will to the property. The connection in which the words were used indicate that he understood them to mean that he would convey the property to her. Although the means proposed would not have effected that purpose, yet that is immaterial; the significant fact is that he recognized his daughter's right to the property and his obligation to secure it to her.

One of the witnesses testified to a conversation between the plaintiff's father and her mother in which she said, "Old man, where is my part of that money?"

He said: "You don't get any money; I will pay for the land with your money."

The testimony of defendant's witness that about the time Owensby paid the note he borrowed thirty dollars from witness does not overthrow any of the plaintiff's evidence. In asking for the loan he mentioned burial expenses and the doctor's bill which he desired to settle, and also the note. The defendants got the full benefit of this evidence in the finding of the chancellor that only one-half of the purchase price of the land was paid with money of plaintiff's mother and the decree giving her only one half the land.

We have no doubt the learned chancellor had a just conception of the case. The judgment is affirmed. All concur.