236 S.W.2d 335 (1951)
MIDDELTON
v.
REECE et al.
No. 41726.
Supreme Court of Missouri, Division No. 1.
January 8, 1951.
Motion for Rehearing or to Transfer to Denied February 12, 1951.
*336 Whitney W. Potter, Earl C. Borchers, St. Joseph, for appellant.
Gene Thompson, Frank Thompson, Maryville, John Robinson, Harold Miller, Maysville, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied February 12, 1951.
DALTON, Judge.
Action in equity to establish a resulting trust in described real estate and personal property in Andrew county and for specific enforcement of a contract to make a will devising and bequeathing the described property to plaintiff, for an accounting of rents and profits and for other relief. The trial court found the issues for defendants and that defendant Mattie E. Reece was the fee simple owner of described real estate and the owner of the personal property, subject only to the administration of the estate of Thomas A. Reece, deceased. Plaintiff has appealed.
The fourth amended petition upon which the cause was tried proceeded upon the theory that plaintiff's father Thomas A. Reece, at the time of his death on February 25, 1948, "had in his name and under his control as trustee a large amount of money, livestock, real estate and other property belonging exclusively to this plaintiff." The described real estate included 295 acres alleged to have been acquired by Thomas A. Reece in 1890, 60 acres, acquired in 1910, and certain lots in the city of Savannah acquired in 1924. The personal property described included bank accounts in the sum of $5500 and "also a large amount of personal property on the farm such as household goods and furnishings, farm implements and machinery and a large herd of purebred registered Hereford cattle," all of which property was alleged to be the product of the trusteeship.
As grounds for the creation of the trust, plaintiff alleged that she was the daughter of Thomas A. Reece and Rose B. Reece; that in 1890 her mother inherited in excess of $1000 from a deceased brother and the money was used to purchase the described 295 acre farm, title to which was taken in the name of Thomas A. Reece; that in 1902 her mother inherited $1400 from plaintiff's grandfather and part of the fund was used to buy twelve or more registered Hereford cattle and the balance used for the construction of a new house on the 295 acre farm; that plaintiff's father operated the farm and cattle business under the name of "Thomas A. Reece, Proprietor," and prospered; that from the profits and proceeds of the business her father in 1910 purchased the described 60 acres of land and took title in his own name; that in 1915 plaintiff's mother inherited $2400 from plaintiff's grandmother and said sum was used by Thomas A. Reece in improving the described real estate and purchasing livestock and equipment; that in 1924 from the profits and proceeds of the farm and cattle business Thomas A. Reece purchased the described city lots and took title in the name of himself and wife, but that his wife predeceased him, dying on October 7, 1929; that the farm and cattle business, although carried on in her father's name, was in truth and in fact "as trustee for the benefit of his wife, Rose B. Reece"; that no administration was had on the estate of Rose B. Reece, deceased; that plaintiff and her brother Virgil Thomas Reece were the only children, and her father agreed with them that, if no administration *337 was had on said estate, she and her brother would at the proper time receive everything that stood in the name of Thomas A. Reece; that the farm and cattle business continued to be operated in his name; that Virgil Thomas Reece died on June 27, 1932, single and unmarried, but possessed of described personal property of the approximate value of $5000; that "plaintiff agreed with her father that there would be no necessity for administration upon the estate of said Virgil Thomas Reece, but that his property should remain with the father as a part of the trust estate heretofore described"; that, thereafter, plaintiff furnished her father $300 for the purpose of paying interest on notes and furthering her own business in the operation of the trust estate; that in 1933 when Thomas A. Reece contemplated a second marriage, he "promised and agreed with plaintiff that she should have everything at his death and a will in accordance with such agreement would be made before he entered into any marriage; that plaintiff relied upon the said agreement and in reliance thereon permitted her said father to continue the operation of the farm and the cattle business thereon and to use the money that plaintiff had furnished him in connection therewith"; that in 1933 Thomas A. Reece married defendant Mattie E. Reece and, thereafter, continued the operation of the farm and cattle business until his death on February 25, 1948; that by the duly probated last will of Thomas A. Reece, deceased, all of the described real estate, money and personal property standing in the name of Thomas A. Reece was given to defendant Mattie T. Reece, except the town lots in the city of Savannah; that the mentioned bank accounts stood in the name of Thomas A. Reece and Mattie E. Reece, husband and wife; and that all property not inventoried as a part of the Reece estate was claimed by Mattie E. Reece as her personal property, although all of the described property was a part of the trust estate belonging to plaintiff. Plaintiff alleged she had no adequate remedy at law and sought relief in equity, as stated. The answers filed by defendants in addition to specific admissions and denials, set up affirmative defenses, including estoppel, laches, limitations and the statute of frauds.
There is no dispute as to heirship. Plaintiff is the only heir at law of Thomas A. Reece and Rose B. Reece. Mattie E. Reece is the surviving widow of Thomas A. Reece, deceased. Rose E. Reece died in 1929, Virgil T. Reece in 1932 and Thomas A. Reece in 1948. Thomas A. Reece acquired the described real estate at the times stated and took title as alleged. He further engaged in the cattle business on an extensive scale and bought, bred, sold, advertised and showed registered Hereford cattle from about 1903 to the date of his death. The farm was operated as alleged, in the name of Thomas A. Reece, Proprietor, and the name "Oakhurst Farm" was duly registered in the County Clerk's office in his name as owner. He died testate and devised the lots in Savannah to plaintiff and left the remainder of his estate to his widow, Mattie E. Reece. Plaintiff filed a will contest, but the will was duly proven and admitted to probate in solemn form and administration is in progress upon the estate. The real and personal estate in question, except the bank accounts hereinafter mentioned, was inventoried as a part of the Reece estate. There was no administration upon the estates, if any, of Virgil T. Reece and Rose B. Reece.
Plaintiff testified that her maternal grandfather, M. M. Elliott, Sr. died in 1902, and left an estate; that Rose B. Reece received $1400 from her father's estate with which "she bought Hereford cattle"; that plaintiff "saw her put it (the $1400) in the bank first"; that the $1400 was used to purchase Hereford cows from Nick Kirtley in 1905; that plaintiff was 12 years old at the time the first cows were purchased (plaintiff was 56 at the time of the trial); that about one year after "we started in the Hereford business," the name "Oakhurst Hereford Farm" was agreed upon; that plaintiff's mother "took these cattle that she bought at the Nicholas Kirtley sale" to the Oakhurst Hereford Farm, where she continued in the cattle business and "worked at it the rest of her *338 life." Plaintiff's father "managed them and looked after them and cared for them." A number of persons assisted plaintiff's father and mother in the showing and sale of Hereford cattle. Plaintiff's brother Virgil learned the pedigrees and he helped to prepare the cattle for sales and shows. When Virgil approached young manhood, plaintiff's mother and father advertised Oakhurst Hereford cattle in the American Hereford Journal under the name of T. A. Reece and Son. Plaintiff's mother advertised the business under the name of plaintiff's father and brother or under the name of T. A. Reece "throughout the entire period of her life." In 1910, plaintiff's mother purchased the described 60 acres of real estate from Mary Davis. The source of the money that constituted the purchase price of this farm "was the proceeds from the increased business of the Herefords," her mother's Hereford cattle. The 60 acres became and was a part of the home farm upon which the cattle business was operated. In 1913 plaintiff married Carl Middleton and moved to a farm about 8 miles away. After plaintiff's mother died in October, 1929, plaintiff and her father and her brother continued to operate the farm and cattle business. Plaintiff participated with them in conferences and in planning and in carrying on the Hereford cattle business on the Oakhurst Hereford Farm, both before and after the death of her mother. Plaintiff's father prepared the written advertisements for the newspapers and journals and plaintiff assisted in determining when sales would be held and what cattle would be sold or would be placed in the herd. When plaintiff's brother, Virgil, died in 1932 he left an estate consisting of a Chrysler car, a diamond ring, livestock and an "interest in the Hereford cattle," "he was a joint owner of the herd of Oakhurst Herefords." He also had "a lot of personal effects, such as clothing and furniture and * * * a team of mules," all located on the Oakhurst Hereford Farm.
On the first Sunday after her mother's death, plaintiff had a conference with her father in her brother's presence at her home. Her father asked if he would be permitted to carry on her mother's business as he had been doing and she and her brother consented. Plaintiff's father then continued handling the business with plaintiff and Virgil the same as he had handled it before. After Virgil's death plaintiff had a conference with her father at the St. Joseph Hospital about continuing to handle the property and business of the Oakhurst Hereford Cattle Farm. He asked, "Can I be permitted to carry on his business as I did after your mother was gone?" Plaintiff consented and "there wasn't any special change" with reference to carrying on the business, "it wasn't changed at all." Plaintiff said she had the utmost confidence in her father, had no reason to doubt him and had never objected to anything he did about the business and, therefore, had no administration on either her mother's or her brother's estate. It had taken years to build up the herd and the reputation, she had helped to build it up herself and she did not want to tear it down.
She identified a "herd book" kept by the Oakhurst Hereford Farm, containing a record of all animals, pedigrees, dates, owners, transfers, blood lines, names, description and sex of all the Hereford cattle. This record began in May 1911 and continued until June 15, 1943, and showed a record of 528 different animals raised on the Oakhurst Hereford Farm. Plaintiff also testified with reference to 154 registration certificates of the American Hereford Cattle Breeder's Association. She testified as to their correctness prior to April 15, 1933, but said she had no personal knowledge of the herd records after April 1933. These certificates are dated from September 15, 1903 to October 20, 1943. Three certificates cover the purchase of pedigreed cows by T. A. Reece from N. Kirtley on April 7, 1905.
Plaintiff further testified that "our first herd bull was bought from Warren Landers in 1902"; and that eight cows were purchased from Nick Kirtley in 1905, as the sale's record shows. She gave the names "of seven of these cows. On the average, the herd numbered 40 to 50 animals, *339 including 20 to 30 cows. In later years the number varied, but was about as usual when plaintiff's father married his second wife. Of her own knowledge plaintiff could not say how many cattle were on the Oakhurst Hereford Farm at the time of her father's death. The best animals were kept and shown and many prizes were won at stock shows.
On cross-examination, plaintiff testified that she was 8 years old in 1902 and that her mother received $1400 from the M. M. Elliott, Sr., estate between 1902 and 1905, 1903 or 1904. Her uncle M. M. Elliott, Jr., took over the estate after his father's death and handled it until distribution was made in 1903 or 1904. M. M. Elliott, Sr., had a 144 acre farm, with livestock and farm machinery. His wife and son, M. M. Elliott, Jr., resided with him and his son and widow remained on the farm after his death and until the widow died. The $1400 was paid to plaintiff's mother in the State Bank in Savannah and plaintiff remembered going to the bank with her, when the money was put in the bank at Savannah. The money was paid by check of M. M. Elliott, Jr. in his individual capacity. In rebuttal after exhibit 16 was in evidence, plaintiff testified that her said uncle was a cattle and hog feeder and did business at a St. Joseph bank and she thought the check to her mother for a share of the proceeds of the grandfather's estate was drawn on a St. Joseph bank, of M. M. Elliott, Jr., in his individual cacheck to plaintiff's mother, plaintiff's father was present and he deposited the check in his own account in the State Bank immediately after plaintiff's mother received it. The check was payable to plaintiff's mother, but she had no bank account at that time. The eight cows, she had referred to, were purchased in 1905 at an average cost of $45.00 per head. The 60 acre tract purchased in 1910 was paid for out of the proceeds, profits and receipts from the cattle. Plaintiff's mother used "that and her other money" in buying the 60 acres.
In 1933 plaintiff learned that her husband had attempted to have her father turn over to her the property she claimed by inheritance from her mother and brother and that he had refused to do it. Plaintiff identified exhibits 9 and 10 as in her handwriting. She admitted that she wrote them and mailed them to her father. One was dated March 6, 1933, and the other March 21, 1933, each purported to be a statement of account, T. A. Reece, debtor, Mary Middleton, creditor. The first showed a demand for one cow $25 and $100 with 8% interest from August 27, 1932, and the second demanded payment of the $100 and interest "by the 28th or suit will be filed." She also identified exhibits 11 and 12 as in her handwriting and which she had transmitted to her father. These exhibits were detailed lists of household goods, kitchen furniture, pictures, rugs, meat, lard, etc., and included a demand: "Send everything that any Elliott has ever had over there." She identified a copy of a letter as in her handwriting addressed to H. L. McCoy, Director of Insurance, date July 26, 1932 and stating: "In reply to F. C. A. D. In regard to my son Virgil T. Reece XC 565-112 who died June 27, 1932, there is no will or estate. * * *." Plaintiff said the letter must have been written for her father. Plaintiff further testified that, at the time of her mother's death in 1929, she had full knowledge of all of the facts testified to by her with reference to her mother's investment of money in and the purchase of cattle. Plaintiff's father had stayed on the farm and worked on the farm and looked after the herd of cattle as long as plaintiff "knew anything about it." From 1905 to 1933 he never engaged in any other independent business. She said her father "had an interest in" the Hereford herd. "We made our living that way * * *. We did not figure it out in dollars and cents. It was all a concern of T. A. Reece and he operated under a proprietorship." Plaintiff didn't know what his interest was. On redirect examination, plaintiff testified that she had not understood the questions or intended to testify that her husband had told her that, in the 1933 conference, her father had refused to turn over to her the property she claimed by inheritance. She then testified that her husband had told her that her father "offered to make this *340 deed or by a will to take care of my property." Plaintiff said she had received nothing from her father's estate.
Plaintiff's husband testified that from 1912 to 1932 the Reece herd of Hereford's usually contained 20 to 25 cows and that witness talked to Mr. Reece on February 14, 1933 at Savannah about the interest plaintiff was claiming in the property. Witness said he told Reece that plaintiff "wished he would fix her mother's property so that she (plaintiff) would get it at his (Reece's) death * * * so there would be no litigation"; that Reece did not deny that plaintiff had an interest, but said "will they have to be recorded * * * can it be taken care of with a will"; that Reece "didn't see fit to do it at that time apparently"; that Reece asked him "if Mary was to die would you give your children her part." Witness said he reported the conversation at once to plaintiff. Mr. Reece and his wife, Rose, always referred to the cattle as "our cattle."
It was admitted that the T. A. Reece will was written May 26, 1936; and that plaintiff had been devised the described lots in the city of Savannah. Other evidence offered by plaintiff included copies of advertisements of Oakhurst Herefords appearing in the American Hereford Journal, some in the name "Thomas A. Reece and Son, Savannah, Mo.," and others by "Thos. A. Reece." Records of the Journal from June 15, 1928 to June 15, 1930 showed the advertising account of Thomas A. Reece and Son for this period. There was further evidence that the original sources of the Oakhurst Hereford herd were acquired from Nick Kirtley; that bulls were acquired from Landers and others.
Carl Elliott, a nephew of Rose B. Reece, testified that M. M. Elliott, Sr., left an estate including about 238 acres of land; that there was some sort of distribution to six heirs of about $1400 each and he thought the estate was settled about 1902. Plaintiff offered to show by this witness that between 1908 and 1915 Rose B. Elliott Reece had said to him in the presence of her husband, Thomas A. Reece, "it was my money that bought these cattle and this Hereford herd is mine"; and that to that statement Thomas A. Reece gave assent or at least made no denial. The offer was refused. The inventory filed in the Thomas A. Reece estate listed some 26 head of cattle, including 3 young calves. Bank accounts in the name of Thomas A. Reece and wife, Mattie E. Reece, totalled some $6285 at the time of Reece's death.
At the close of plaintiff's case, on motion of defendants and with the consent of plaintiff, title to a described 235 acre tract was ordered quieted in defendant (Mattie E. Reece), and plaintiff released all claim to the three bank accounts and all claim to the personal property described in the inventory and appraisement filed in the Reece estate "except and for any pedigreed Hereford cattle in the possession of the said Thomas A. Reece at his death on February 25, 1948." It was stipulated and agreed before the court that only the 60 acre tract described real estate (Davis tract) acquired in 1910 and "the cattle" remained in issue in the cause, as to whether or not such was trust property.
Defendants offered in evidence a pass book of Thomas A. Reece with the State Bank of Savannah (Exhibit 16) covering a period from April 28, 1900 to August 24, 1945. Its identity was admitted. This book showed many deposits, including a $1459.54 deposit on December 7, 1900 and a $1406.75 deposit on November 30, 1904, the latter, marked "St. Joe." There were other items marked "St. Jo" or "St. Joe." A deposit on November 22, 1910 of $4800.00 and one on April 8, 1905, for $800.00 were marked "Note." The notations are in the same handwriting as the entry of the amounts. Defendant also offered a deed from Mary Davis to Thomas A. Reece dated November 22, 1910, conveying the 60 acres in question for a recited consideration of $4800.00. Defendants also offered the exhibits identified by plaintiff in cross-examination and hereinbefore set out. It was admitted that title to the 60 acre tract remained in Thomas A. Reece until his death. It will not be necessary to review other evidence offered by the parties.
*341 Appellant assigns error on the finding against her and on the exclusion of the mentioned evidence. Respondents ask an affirmance of the judgment, but insist that much incompetent, irrelevant and immaterial evidence was admitted over their objection, including testimony barred by Sec. 1887, R.S.1939, Mo.R.S.A. See Roberts v. Roberts, Mo.Sup., 291 S.W. 485, 487; Sutorious v. Mayor, 350 Mo. 1235, 170 S.W.2d 387, 391. It will be unnecessary to review the chancellor's ruling on evidence, since on appeal in an equity case where the appellant has brought up the entire record, this court considers such evidence in the record as it deems admissible, excludes from consideration evidence improperly admitted, and reaches its judgment on the competent evidence offered without regard to the trial court's rulings. Bowman v. Kansas City, Mo.Sup., 233 S.W. 2d 26, 29; Roberts v. Roberts, supra.
In a case such as this we are not bound by the chancellor's findings, but must review the evidence de novo and reach our own conclusions as to its weight and value. However, we usually defer to the chancellor's findings when the case turns upon the credibility, weight and value of the oral testimony of witnesses who have appeared personally before him, unless we are satisfied that the findings should have been to the contrary. Suhre v. Busch, 343 Mo. 679, 123 S.W.2d 8, 19; Beach v. Beach, Mo.Sup., 207 S.W.2d 481, 486.
Appellant proceeds upon the theory (1) that the burden of proof rested upon her "to show the underlying facts necessary to give rise to a resulting trust by clear, cogent and convincing proof"; (2) that a rebuttable "presumption of a resulting trust arises where one person pays the consideration for real estate and personalty title to which is taken in the name of another"; (3) that appellant's mother could have enforced a resulting trust and appellant, as her mother's sole heir at law, may do so; and (4) that appellant is entitled to have a resulting trust imposed upon the property in Reece's possession at the time of his death and "also upon the increase, income and profits from the Hereford cattle business mentioned in evidence down through the years." Appellant now insists that she sustained her burden of proof; that respondents did not offer "any competent, material or substantial evidence impeaching or contradicting appellant's evidence"; and that the judgment of the trial court should be reversed and judgment entered for appellant. Appellant relies particularly upon Lewis v. Lewis, Mo. Sup., 225 S.W. 974; Roberts v. Roberts, supra, 291 S.W. 485; and Owensby v. Chewning, 171 Mo. 226, 71 S.W. 122, and insists that these cases may not be distinguished from the case before us. In each of these cases the trial court had approved the credibility, weight and value of the evidence supporting the establishment of the resulting trust as prayed and had entered judgment accordingly. In the case at hand the decision turns primarily upon the credibility, weight and value of the oral testimony of appellant, her husband and her cousin, all of whom appeared personally before the trial chancellor, and upon the sufficiency of the oral testimony of these and other witnesses to make out a case for the establishment of a resulting trust, if their credibility is accepted. In this case judgment was entered below for the defendants.
Appellant relies particularly upon her own testimony that her mother's father died in 1902 leaving an estate; that her mother's share of the estate was $1400.00; that that sum was paid to her mother in 1903 or 1904 by her uncle's check in his individual capacity, payable to her mother; that appellant's father deposited the check in his account in the State Bank of Savannah; that he used the fund to buy eight Hereford cows from N. Kirtley; and that the eight cows comprised "the foundation cattle of the Reece herd." She further said her father had purchased his first herd bull in 1902, when she was 8 years of age. But appellant also testified that she saw her mother put the $1400.00 in the bank; that her mother bought Hereford cattle from N. Kirtley with the money in 1905; that the cattle were taken to the Oakhurst Hereford Farm; that her *342 mother continued in the Hereford business and worked at it and handled it on that farm the rest of her life; and that appellant's father only managed, looked after and cared for the cattle. Appellant points to an entry in the Reece's pass book with the State Bank of Savannah showing a $1406.75 deposit (marked "St. Joe") on Nov. 30, 1904, but this exhibit also shows additional deposits before and after that date. The balance in this account was reduced to $151.54 on December 3, 1904, and this balance included a $112.50 deposit made on the same date. Deposits were subsequently made in the account before the N. Kirtley sale was held April 6 and 7, 1905. On April 8, 1905, the pass book shows a deposit (marked "note") in the sum of $800.00. The exhibit fails to support appellant's contention that $1406.75 or any part thereof was used by either her father or her mother to purchase eight cows on April 6 and 7, 1905.
Further, appellant's testimony is in many respects very general, indefinite, uncertain and conflicting, it is inconsistent and irreconciliable with the position evidenced by documents admittedly in appellant's handwriting and dated some 17 years prior to the trial of this cause. No effort was made to reconcile her present testimony with her position as indicated by these documents.
Appellant further relies on her own testimony that the Davis 60 acres was purchased in 1910 for $4800.00; that the money used to make the purchase "was the proceeds from the increased business of the Herefords," her mother's herd of Hereford cattle; and that the land was bought with the proceeds and profits of her (mother's) cattle, "that and her other money." It is apparent that this testimony evidences conclusions of a most general character. Further, the deed to this tract is dated November 22, 1910 and shows a consideration of $4800.00, but the Reece pass book with the State Bank of Savannah shows a deposit on this date, "Note 4800.00", and that the checks paid from the account between Oct. 10, 1910 and Jan. 16, 1911 totalled $5818.94. It is apparent the trial court drew the conclusion the real estate was paid for with borrowed money and that conclusion is approved. It should also be noted that appellant testified that her brother Virgil "was joint owner of the herd of Oakhurst Herefords"; that her father Thomas A. Reece "had an interest in" the herd of Hereford cattle; that appellant did not know what his interest was; that she "did not figure it out in dollars and cents," but that "we made our living that way * * * he operated under a proprietorship." On the basis of this evidence the alleged interest of plaintiff's mother in the personal property, or the extent of trust property, if any, remains indefinite and uncertain. This court may not speculate on the extent of the interest, if any, or the amount originally invested. See, Shelby v. Shelby, 357 Mo. 557, 209 S.W.2d 896, 899.
Further, the fact that appellant's mother ever received any funds whatsoever from her father's estate and the date of such receipt, if any, rests entirely upon oral evidence and the same is true as to whether or not any part of such funds, if received, were ever invested in the particular eight cows, which were said to have been the foundation of the Reece herd. No documentary evidence was presented as to M. M. Elliott, Sr's., ownership of any real estate or personal property, or as to the date of his death, the distribution of his estate, or as to Rose B. Reece's share of his estate. Appellant testified that he had a 144 acre farm, with livestock and farm machinery; that he died in 1902 and that his widow and son continued to live on the property until the widow's death. Carl Elliott said the farm consisted of 238 acres and distribution was made to six heirs about 1901 or 1902. All of these alleged facts rested upon the memory of witnesses after a lapse of many years.
It is well settled that, in order to establish a resulting trust by parol evidence, the evidence must be so clear, definite and positive as to leave no reasonable doubt in the mind of the chancellor as to the claimant's right to have a resulting trust established; and it must be clearly shown that the funds of the party in whose favor the trust is sought to be established went *343 into the property sought to be impressed with the trust. Aeby v. Aeby, Mo.Sup., 192 S.W. 97, 99; Suhre v. Busch, supra, 123 S.W.2d 8, 19. In this case plaintiff seeking to have "the cattle" in the possession of her father at the time of his death impressed with a trust on the theory that they represent the increase, offspring and profits of the eight cows purchased in 1905. This was attempted to be shown in a most general manner without reference to new stock purchased or as to whose funds were used to make such purchases.
It is clearly apparent that the trial chancellor did not accept the oral testimony of appellant and her witnesses, and after careful review of the whole record we have reached the conclusion that we must and should defer to his findings. Appellant's evidence is not of the quantum or character required to establish a resulting trust and particularly so in view of the trial chancellor's finding against her.
The judgment is affirmed.
All concur.