CLOWSER, *Appellant*, v. NOLAND *et al.*

### Division One, March 10, 1896.

Husband and Wife: PURCHASE OF LAND: SEPARATE MEANS OF WIFE: CREDITORS. A husband, at his wife's request, purchased two lots for her, and, also at her request, borrowed the money necessary to pay for the same and to build a house thereon, and gave his notes therefor which were paid by the wife out of her separate means. The husband took the title to the lots in his own name and they were levied on by a judgment creditor of his whose debt was not contracted on the faith of his ownership of the property but before its purchase. The husband, before sale under the levy, conveyed the property to his wife through a third person. *Held,* that the lots belonged to the wife and were not subject to levy for the husband's debts.

*Appeal from Buchanan Circuit Court.*—HON. H. M. RAMEY, Judge.

AFFIRMED.

*James W. Boyd* and *Brown & Pratt* for appellant.

(1) This court will try the case *de novo*—try it upon the evidence, as if it had originated here, and

was to be tried here for the first time. *Lins v. Lenhardt*, 127 Mo. 271; *Blount v. Spratt*, 113 Mo. 48; *McElroy v. Maxwell*, 101 Mo. 294; *Benne v. Schnecko*, 100 Mo. 250. (2) It is admitted by the defendants that the title to said lots was, when this suit was instituted, and still is, in appellant, unless the defendant Mary E. Noland purchased and paid for said lots with her own separate money. To create a resulting trust in her favor, it is absolutely necessary for her to show that she actually owned the purchase money, actually paid it as her own at the time of the purchase, and as a part of the original transaction of purchase, and she must have actually paid it, as a purchaser. *Shaw v. Shaw*, 86 Mo. 594; *Kelly v. Johnson*, 28 Mo. 249. (3) "The trust must have resulted from the facts which occurred at the time of or anterior to the purchase, and can not be created by subsequent occurrences." 28 Mo. 255; 1 Perry on Trusts [3 Ed.], sec. 133; *Reed v. Reed*, 25 N. E. Rep. 1095. (4) Subsequently paying a note which may have been executed for money with which to purchase the property or to make improvements thereon, or afterward paying off a part of the purchase price of the property, does not create a resulting trust. *Zeller v. Light*, 17 Atl. Rep. (Pa.), 433; 28 Mo. 249; *Moorman v. Arthur*, 18 S. E. Rep. 869; *Beecher v. Wilson*, 84 Va. 813; 1 Perry on Trusts [3 Ed.], sec. 133. (5) The person claiming a resulting trust must have, under the circumstances above stated, paid all the purchase price or an aliquot part thereof. *O'Donnell v. White*, 29 Atl. Rep. 769; *Reed v. Reed*, 25 N. E. Rep. 1095. (6) The money must have been paid at the time of the purchase, in the character of a purchaser. 1 Perry on Trusts, sec. 133. (7) Resulting trusts must be established beyond a reasonable doubt. *Laforce v. McFarland*, 25 S. W. Rep. (Mo.) 530; *King v. Isley*, 116 Mo. 155; *Burdett v. May*, 100 Mo. 13; *Allen v.*

*Logan*, 96 Mo. 591.   (8) The court committed error in permitting defendant, Perry W. Noland, to testify to conversations which occurred between him and his wife, and to facts tending to show that he was her agent.   The court permitted him to testify to conversations which occurred between him and his wife, and permitted the wife to testify to conversations which occurred beween her and him.   Such testimony is erroneous and illegal and entitled to little or no weight.   *McFadin v.  Catron*, 120 Mo. 252;   *Holman v. Bachus*, 73 Mo. 49; *Moore v. Wingate*, 53 Mo. 399.

*Casteel & Haynes* for respondents.

(1) Revised Statutes, 1889, section 6869, has been so often construed that it is hardly necessary to cite authorities, to show how jealously the courts have guarded the wife's interest in this species of property. The following recent cases on the subject will suffice. *Boughton v. Brand*, 94 Mo. 169;   *Kyle v. Powell*, 96 Mo. 526; *McGuire v. Allen*, 108 Mo. 403; *Leete v. Bank*, 115 Mo. 184; *Scrutchfield v. Sauter*, 119 Mo. 615. (2) And wherever money is derived from the sources in said section mentioned, and is by the husband invested in real estate and the title taken in his own name, the land is impressed with the trust and the husband becomes a trustee for her.   *Holthaus v. Hornbostle*, 60 Mo. 442;   *McCoy v. Hyatt*, 80 Mo. 134; *Boughton v. Brand*, 94 Mo. 169; *Kyle v. Powell*, 96 Mo. 526; *Scrutchfield v. Sauter*, 119 Mo. 615.   (3) And in the event suit is brought against the husband in ejectment, in a case of this character, it is proper for the wife to be made a party and for her to set up her equitable title to the property in question, and when the property has been sold, as in this case, and a deed made, ask the court to cancel the deed and confirm title in

defendant. *Kyle v. Powell*, and *Scrutchfield v. Sauter*, above cited. (4) The next point, we wish to notice, made by appellant, is his eighth, in which he complains of the court in admitting the testimony of Mary E. Noland. She was a competent witness in all respects, except as to conversations between herself and husband. She was a party in interest and was a competent witness to prove that she had appointed her husband as her agent to purchase the property and to manage her business. R. S. 1889, sec. 8922; *Scrutchfield v. Sauter*, 119 Mo. 615. (5) Appellant next finds fault with the court for permitting defendant Perry W. Noland to testify that his wife made him her agent to attend to purchasing the lots and building the house and generally to attend to the business pertaining to the transaction. There was no error in this ruling. R. S. 1889, sec. 8922; *Leete v. Bank,* 115 Mo. 184.

ROBINSON, J.—This suit in ejectment was instituted by plaintiff as execution purchaser of two lots in the town of Dearborn in Platte county, against Perry W. Noland, who was at the time and for two years prior thereto living upon the lots with his wife Mary E. Noland.

On motion of defendant Perry W. Noland, Mary E. Noland was made a party defendant and both filed separate answers in which it was alleged that the lots were purchased from C. A. Stangner and others for said Mary E. Noland and that the lots and all improvements put thereon were paid for by her separate means; that the lots had been contracted for and a house built thereon, and defendants lived therein a long time prior to the making out of the deed to Perry W. Noland; that by a mistake of the scrivener the deed was made out in the name of Perry W. Noland instead of the name of Mary E. Noland,

and that the grantor, after the mistake was discovered, was requested to execute a new deed in the name of Mary E. Noland, which he at first promised to do, but afterward refused; that thereafter on the eleventh day of August, 1891, in order to place the title of said lots in the said Mary E. Noland, both defendants conveyed the property to one James Watson, who on the same day reconveyed the property to the defendant Mary E. Noland, and that said deed was duly filed for record on the twelfth day of August, 1891, prior to the execution sale of said lots on that day, and that the plaintiff and all bidders at said execution sale were notified of the right and title of the said Mary E. Noland to said lots; that the plaintiff, however, in order to satisfy a judgment against the defendant Perry W. Noland seized and levied upon the property in controversy as the property of said Perry W. Noland, and on the twelfth day of August as aforesaid had his interest therein sold; that the defendant Perry W. Noland had no interest therein, and the plaintiff was fully notified thereof, but insisted on and did buy in said property at said sale and received a sheriff's deed therefor.   Defendant Mary E. Noland then prayed the court to cancel the sheriff's deed as a cloud on her title, and for such other relief as she might be entitled to, etc.

The case was tried by the court and the issues found for the defendants, and a decree entered thereon canceling, annulling and holding for naught the sheriff's deed to the lot and confirming the title of Mary E. Noland thereto.   There seems to be but little conflict as to any material statements of facts as made by the witnesses.   The conflict in statements of mere conclusions, drawn from facts, not disputed, is as harmless as it is immaterial and need not be noticed.

So far as it will be necessary for an understanding and the determination of this case, we will give the following brief statement of the facts therein involved:

In the fall of 1888, or in the early spring of 1889, the defendant Perry W. Noland went from the town of Halleck where he and his wife were then living to the town of Dearborn in Platte county where he was contemplating soon to move, to enter business, and also while there made a contract with one C. A. Stangner for the two lots in controversy, agreeing to pay therefor $100, nothing being said at the time as to when the money was to be paid or when the deeds to the lots were to be made. Within a few months thereafter he also purchased another block of ground in the town from Mr. Stangner, agreeing to pay for it $150. On May 2, 1889, Mr. Stangner made out a deed, including the lots in controversy as well as the block of ground afterward contracted for, to Perry W. Noland, in which the consideration for all the property was expressed at $250, but this deed was never delivered to Mr. Noland for some reason.

Defendant Perry W. Noland shortly after purchasing the last block of ground from Stangner, paid him for both pieces of property contracted for by him. Afterward, and before the deeds to the property had been delivered, Perry W. Noland in the month of April, 1891, requested Stangner to make a deed to the block of ground last contracted for, to one Thomas Bashford to satisfy a demand that he then held against Noland, which Stangner did, and shortly thereafter Stangner made out and delivered to the defendant Perry W. Noland a deed to the lots in controversy, and same was duly filed for record. Shortly after the lots had been contracted for, a house was built upon them, costing about $1,000, and defendant moved into it and from that time up to the day of the trial of

this case in the circuit court used and lived in it as a home.

Plaintiff claims said property by virtue of a sheriff's deed therefor, made to him as purchaser of the property on the twelfth day of August, 1891, at execution sale on a judgment in favor of himself and against the defendant Perry W. Noland rendered on the eighth day of April, 1890. This judgment was for the sum of two notes and interest, made by the defendant Perry W. Noland to the plaintiff on August 15, 1883, and the other April 7, 1884, both being past due before the purchase of the property by the Nolands.

Mrs. Noland testified that she never saw the lots before they were contracted for, but that she directed her husband to buy for her two lots, and that she would pay for same, and build a home for them to live in when they would move to Dearborn, out of money that she was soon expecting to receive from the estate of her father and mother. Perry W. Noland also testified that he bought the lots in controversy for his wife, and that he told Mr. Stangner at the time of contracting for them that they were for his wife. Mr. Stangner, however, testified that he never heard the name of Mrs. Noland used in connection with the purchase and sale of the lots and that he knew only Mr. Noland in the transaction and that his pay for the lots came through Mr. Noland, and that he made out a deed to the lots in the name of Mr. Noland, and that same was accepted without objection at the time and that it was not until sometime afterward that Mr. Noland came to him and asked that he make a deed to the lots to his wife, as same had been purchased for his wife, and that they had been paid for with her money; that he at first agreed to make the deed to Mrs. Noland, but on further reflection refused to do so.

The proof further shows that the lots and el.. .n,

provements that were placed on them were paid for out of money procured by Mr. Noland on two notes, one for $500 signed by himself, the brother, and the brother-in-law of Mrs. Noland, and the other for $600, and signed by himself and secured by a deed of trust on Mrs. Noland's property. The testimony further shows that Mr. Noland was largely in debt and was wholly insolvent, and that the only property he owned was some stock in a milling company at Dearborn, and that it was carried in the name of John Murphy, the brother of Mrs. Noland.

The proof was unquestioned that Mrs. Noland paid off both the five and six hundred dollar notes, above referred to, when they matured, with money that she received from the estate of her father and mother, and that she treated same as her obligations, and she testified that she requested and authorized her husband to make the loans of $500 and $600 as above, and that she would pay them off as soon as she would get her money from her father and mother's estate as she afterward did.

Mr. Kirby, one of the signers on the five hundred dollar note, with Perry W. Noland, testified, when asked if he knew for whom the $500 was gotten, that "it was for the purpose of building a house for Mary E. Noland. The note was to be paid off by Mrs. Noland out of money that she was expecting from her father's estate, and was, in fact, so paid by her indorsing a check payable to herself, that she had received from the estate of her father." Mr. Kirby also testified that the money procured on the five hundred dollar note was placed in the Dearborn bank, and was used for the purpose of building the house erected upon the lots in controversy.

Plaintiff insists that as the proof is undisputed that the lots, as well as the improvements put thereon,

were paid for by money obtained on notes signed by Mr. Noland, Mr. Murphy, and Mr. Kirby, in one instance, and by Mr. Noland alone in the other, and in neither of which Mrs. Noland joined or was liable, that the money obtained thereon must be held and treated as the money of Mr. Noland, and if so then no trust will be created by the mere payment of the notes afterward by Mrs. Noland, she not being primarily responsible on either note. And further that it was necessary for Mrs. Noland to show that she actually paid it at the time of the purchase as her money and as a part of the original transaction of purchase, and that she must have actually paid it as a purchaser in order that a resulting trust be created in her favor.

In that plaintiff's debt (for which these lots were sold) against Mr. Noland long antedates the acquiring of the lots in controversy and the recording of the deed to same in the name of the defendant Perry W. Noland, there is no question of estoppel to be considered by reason of the conduct of Mrs. Noland in permitting her husband to assume to be the owner of record of the property and thereby giving to him a credit on the apparent ownership of same, not warranted by the true facts, even if it be conceded that Mrs. Noland knew that the title to the lots had been taken in the name of her husband and she made no objection thereto (which, however, she denies).

There is no claim in this case that plaintiff has been injured in any way on account of the title of the property being in the name of Perry W. Noland. His debt, which the sale of this property was made to satisfy, was not created on the faith and belief that Perry W. Noland owned the property, but grew out of two notes, one made in 1883, the other in 1884, long before the property in controversy was contracted for,

and six years before the deed therefor appeared on record in the name of Perry W. Noland.

While Mr. Noland in fact got the money on the note before named and signed by him, and paid out on the lots and for the improvements that were put thereon, he tells the court that he got the money for his wife, and at her instance, and as her agent, and that she promised to see them paid, and in fact did pay them when they matured. While Mr. Noland was liable as a principal on the note so far as the payees were concerned, and as to them he would be considered the owner of the money received on the notes, he and his wife both tell the court that he was merely acting as agent for the wife in both the getting and paying out of the money.

Under these circumstances the wife would have been liable to the husband and his makers for the money thus borrowed if her statement is true, should the husband or his comaker have been required to have paid the notes signed by them for the two sums of money thus borrowed that went into the purchase of the lots and in paying for the improvements thereon. They were the wife's obligations according to the statements of the wife and the husband and Mr. Kirby, so far as the husband was concerned; and being such, as between them the money derived from the note was the wife's, and if so, and it was used by the husband at the instance of the wife to pay for the lots and improvements, the property then belongs to the wife, purchased with that money, even though the husband did take the title to the lots in his own name, purposely or otherwise. It makes no difference in what manner the husband with the other comakers of the notes procured the money for Mrs. Noland; if it was at her instance and request she became responsible to them and was

bound to pay the debt to the signers, if she failed to pay the notes to the payees.

The question is not as to whether she was liable on the original note that procured the money but was it gotten for her, and was she liable to the maker if she failed to pay the note signed by her husband, Kirby, and Murphy. There could be no doubt as to what a court would do if under the admitted facts of this case the wife was proceeding to have a trust declared in her favor and the husband alone was resisting on the sole ground that the money borrowed to pay for the lots and improvement on notes signed by himself when he would admit that he had gotten the money, at the request of his wife, on notes, and she promised to pay same off when they should mature and in fact did pay them off in obedience to her undertaking with him as her agent. In the act of borrowing the money he was acting as the agent of his wife although he did not disclose her name to the persons of whom he was getting the money. The money borrowed by the husband for the wife, although her name was not disclosed, was the wife's money, and, belonging to her, the ownership of the property purchased therewith would likewise belong to her unless she had authorized her husband to use it for himself, and if the property was taken in the name of the husband, purposely or otherwise, a resulting trust would be created by implication of law in favor of the wife, that the courts if called upon would enforce.

What the court would be compelled by reason of the implication of law in favor of the wife to decree, the husband can do without legal compulsion. The property in this case, according to the finding of the trial court (which we think was fully warranted by the proof) was never the property of the husband although the title thereto stood in his name. Not belonging to

him it can not be said that his conveyance of it to Watson for the use of his wife was in fraud of the rights of his creditors. What Perry W. Noland did on request, under the facts of this case, the court would have compelled him to do had he refused. The controlling question in this controversy, the ownership of the money borrowed on the five and six hundred dollar notes above mentioned, that paid for the lots and all improvements thereon being established, a resulting trust is immediately created by implication of the law thereon and follows the ownership of the money.

While the testimony was that Mr. Noland bought the lots in his own name, and made all the contracts for the building of the house without disclosing the interest of his wife therein, and while it is equally true that all the money that entered into the purchase of the lots was borrowed by Perry W. Noland in the one instance by his personal note with the brother and brother-in-law of Mrs. Noland as joint signers with him thereon, and in the other case on his note alone secured by real estate belonging to Mrs. Noland, still the testimony is equally as certain that Mrs. Noland treated the notes as her own and paid them in both instances with money coming to her from the estate of her father and mother, and she testified that she requested Mr. Noland to buy the lots for her and to borrow the money to pay for same and the improvements thereon. No one can read the testimony and fail to be impressed with the idea that Mrs. Noland owned the property, and that she treated the notes that were given for the money that entered into the purchase price of the lots and the improvements placed thereon as her obligations, although her husband when he made the loans at her instance and request signed them as if he was making the loans for himself instead of for his wife.

In order that the real interest of parties might be

protected, courts will look beyond the mere form of a transaction to the real intentions of the parties, where it is clearly manifest, as in this case.

Whatever might have been the motive of Perry W. Noland in buying the lots in his own name and taking the title thereof to himself could in nowise, under the facts of this case, affect the rights of Mrs. Noland, if, in fact, he agreed to buy the lots for his wife, and led her to believe so, and permitted her to pay off the notes given for the money borrowed, that was used in their purchase, under the belief that she was liable therefor, the lots would belong to her and he would be held and treated as a mere trustee holding the title for the use of the wife, and by proper proceeding could be compelled to execute the trust, by a reconveyance to her of the legal title to the property. Judgment of the trial court will be affirmed. BRACE, C. J., BARCLAY, and MACFARLANE, JJ., concur.