Lulu MEYER, Respondent,

v.

Raymond T. MEYER and Mathilda C. Meyer, Appellants.

No. 44765.

Supreme Court of Missouri.

Division No. 1.

Jan. 9, 1956.

Robert V. Niedner, Paul F. Niedner, Niedner & Niedner, St. Charles, for appellants.

Theodore C. Bruere, St. Charles, Forrest M. Hemker, Greensfelder, Hemker & Wiese, St. Louis, for respondent.

VAN OSDOL, Commissioner.

This is an action in equity to establish a resulting trust in described real estate on Tecumseh Street in Riverside View Addition to St. Charles. The trial court rendered judgment for plaintiff Lulu Meyer, declaring a trust in her favor, and ordered defendants, Raymond T. Meyer and Mathilda C. Meyer, upon payment of $1,464.16 by plaintiff to them, to execute a conveyance to her. Defendants have appealed.

The action was originally brought by Hugo and Lulu Meyer, parents of defendant Raymond. Hugo Meyer died July 15, 1954, while the action was pending. Thereafter, plaintiff Lulu filed an amended petition in two counts. In Count I, plaintiff alleged the death of her husband Hugo and sought a decree establishing a trust in the described property, and, in the alternative in Count II, sought the recovery of $3,737.43, the aggregate amount alleged to have been expended by plaintiff and her husband Hugo in retiring an encumbrance, in repairs and maintenance, and in taxes and insurance.

The parties have taken conflicting evidentiary positions as to their intention and the effect of their acts and conduct in the circumstances of defendants' acquisition of the legal title to the described property. It is essential that we review the evidence; indeed, it is helpful in this case to quote and examine some of the language precisely as used by the parties in testifying in the trial of the cause.

The described property on Tecumseh Street was conveyed to defendants, Raymond and his wife Mathilda, as tenants by the entirety, by William R. Rowe and Lulu B. Rowe by warranty deed dated May 8, 1944. At the time defendant Raymond paid the grantors one thousand dollars in cash and the further sum of three thousand dollars which he borrowed the same day, May 8, 1944, from the St. Charles Building and Loan Association.

At the time of the conveyance to defendants in 1944, plaintiff Lulu Meyer and her husband Hugo resided at New Melle. They had formerly owned a store in New Melle, but they had sold their store and Hugo was unemployed. They jointly owned, or had a substantial "equity" in a rental property, six flats, in St. Louis, in one of which flats defendants were then living "free of rent," although defendant Raymond was acting for his parents in the collection of rentals and the management of the rental property. Plaintiff and her husband Hugo wished to move to St. Charles where he could get employment. They sought the assistance of their son, defendant Raymond, in getting a house in St. Charles.

Plaintiff Lulu testified, "Well, we didn't have any work in New Melle and hardly had any income and we had to do something so we asked him (their son, defendant Raymond) if he could find a place for us here in St. Charles and he did * * * he paid down a thousand dollars on it and we had our money tied up in the St. Louis property and then he took a loan on it and after we had work in St. Charles then, after that, we started to pay off the loan and then later on after we sold the property in St. Louis we paid the whole loan off." After plaintiff and her husband had paid the loan, they said to Raymond, " 'Well, Raymond, we want to pay you off the thousand dollars you have in here' and he said 'No, I don't want the money.' He said 'You just keep that in there; leave it in there because you may need it' and so then he said he would leave that in there * * * then we found out it must be in his name and we told him that we wanted to pay him off because we wanted to have it settled, we wanted to have everything paid for and he said no; and later on we asked him—that way we would get a deed to it—and he said 'No, I keep the deed.' He said 'It is yours but I keep the deed.' Then, later on, we asked him again for the deed and he said 'I keep the deed; maybe some day you can get old age pension.' So that was what he told us."

A real estate broker, who had acted for the parties when the Tecumseh Street property was acquired, testified that defendant Raymond first approached him in the spring of 1944 in regard to the purchase of a home for the father and mother. The witness was "under the impression" the parents were going to live in the property and pay off the loan "and pay Raymond back" when the parents sold their St. Louis property. As the witness remembered—when the deed was to be made out the legal title was put in defendants—the reason was "to protect his (Raymond's) thousand dollars."

Plaintiff testified that "we were insisting that we would like to have a deed * * *. We offered him six thousand dollars for the place * * * we thought if we gave him a good profit maybe we would get a deed and we would give him that. * * * Well, he had the deed—as long as he had the deed—he bought that, maybe, but he always said it was ours."

A witness, who had known the Meyer family for many years, testified that when the property was acquired the parents, or one of them, had questioned, "Now, which would be the best way to take title? Shall we take it in our name or shall we put the title in the name of our son?" On a Saturday "a number of years ago" something was said to the witness by defendant Raymond "about the preparation of a deed (to his mother) but that thing never did materialize * * *."

Victor Meyer, son of plaintiff Lulu and Hugo, brother of defendant Raymond, returned from military service in October, 1945. He found his parents residing in the Tecumseh Street property. He asked his brother Raymond "how the place was made out and he (Raymond) said it was made out in his name, that he had a thousand dollars in it and the folks were going to pay off the loan." In another conversation with the witness, Raymond had said that "he went down to the loan company and told the loan people that the folks wanted to borrow some money. * * * Yes; he told me it was all Mom's, there was nothing he could do about it."

Defendant Mathilda testified that plaintiff Lulu and her husband wanted to come to

St. Charles County "and they didn't have any money to buy and they couldn't rent anything so they asked us if we wouldn't find a place for them to rent or buy, so we looked for a place and we found this place." Defendants came to St. Charles "and went to the various real estate people and * * * I (defendant Mathilda) was the one that spoke for the plaintiffs." Defendant Mathilda said the amount, one thousand dollars, paid on the purchase price was her money. She said the parents were to pay monthly payments to the loan company and pay taxes "until they sold their property in St. Louis and then they were supposed to buy their own place but they insisted on buying our place." She further testified that the parents offered defendants $6,500 for the Tecumseh Street property in 1950 or 1951.

Plaintiff Lulu and her husband paid the building and loan association monthly installments (except the first three installments totaling $75.96 which were paid by defendant Raymond), until November 3, 1945. The payment of these installments and the payment by the parents of one thousand dollars on the principal as of October 28, 1944, reduced the debt to the building and loan association to $1,743.89 as of December 1, 1945, and on that date the parents paid the balance of the loan in full. Meanwhile, the parents had sold their St. Louis property on or about October 3, 1944.

Defendants had not tendered to the parents the amount the parents had paid on the Tecumseh Street property. They took the position the parents' payments were stipulated as rent. Defendants considered that as long as the parents lived in the property "they were living that out."

Defendant Raymond's testimony was somewhat like that of his wife, defendant Mathilda. He said the parents "didn't have any income and they called me and asked me if I could find a place where they could live and we couldn't rent anything—or they couldn't rent anything so I and my wife decided we would buy a place and let them live in it for the time being. * * * I told them we had bought a place and they could move in with the understanding that they would have to pay the taxes and installments on that loan * * * until they bought their own place and they were supposed to do that as soon as they disposed of that place that they had in St. Louis." Defendant Raymond categorically denied he had made the statements to plaintiff and her witnesses which they in their testimony had attributed to him. There also was a conflict in the testimony as to whether the parents had seen and approved the purchase of the property before the deed to defendants was executed.

Some years, probably in 1950, after the parents' St. Louis property was sold, defendants were notified to vacate the flat they had theretofore occupied in St. Louis, and they demanded possession of the Tecumseh Street property. And in October, 1952, defendants instituted a landlord's possessory action in the Magistrate Court in St. Charles County against plaintiff and her husband. After they had been served with notice of the action, plaintiff and her husband interviewed a real estate broker concerning the purchase of another house. Plaintiff testified "Raymond insisted on doing that. He wanted us to do that—he wanted us to invest all our money and put it in a different property and then he was going to put the loan on whatever we couldn't pay with the money."

Plaintiff and her husband paid taxes until and including the year 1950. Defendants have paid the taxes thereafter. Defendants have paid taxes in the amount of $182.48, insurance in the amount of $296.35, and $125.03 for repairs. They had also paid $20.00 insurance, and $18.00 "closing expenses," at the time of the acquisition of the property in 1944.

Defendants-appellants contend plaintiff's petition failed to state a claim entitling her to the relief of a declaration of a resulting trust in that it was not alleged that plaintiff and her husband "did not know of, or consent to" the conveyance being made to defendants. See 90 C.J.S., Trusts, § 460c, pp. 903–904, particularly the

text supported by footnote 56, at page 904, and the language of Corpus Juris quoted by this court in Jacobs v. Jacobs, Mo.Sup., 272. S.W.2d 185, at pages 188–189.

The trial court in its judgment and decree made no express disposition of Count II, and defendants-appellants contend such a failure was error, and the appeal premature. Defendants-appellants further remind us of the fact that, although plaintiff's petition contained the allegation of the death of the husband Hugo "and that plaintiff has been authorized by the Probate Court of St. Charles County to collect and sue for the recovery of all of his assets," it was not alleged in what capacity plaintiff is attempting to pursue recovery. So defendants-appellants say that (in view of the "repugnancy" of the claims set up in Counts I and II and the failure of the trial court to make reference in its judgment to Count II, and in view of the failure to allege the capacity in which plaintiff sues) there must be a new trial of the cause, "even if it were determined by this Court" that the evidence introduced established a resulting trust. However, defendants-appellants say the "principal reason" for their appeal is their belief that the evidence introduced was not sufficiently clear, cogent and convincing to justify the relief of the declaration of a resulting trust.

Defendants-appellants have not pointed out in their brief why plaintiff's lack of knowledge of, or consent to the conveyance to defendants was material and essential in this case in order for plaintiff to prevail and invoke the relief she seeks. A resulting trust arises by operation of law from the facts of a case. It is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises. It cannot be created by subsequent occurrences. Intention is an essential element, although the intention is not expressed by words of direct creation. Purvis v. Hardin, 343 Mo. 652, 122 S.W.2d 936; Middelton v. Reece, Mo.Sup., 236 S.W.2d 335; Jacobs v. Jacobs, supra; Vol. IV, Pomeroy's Equity Jurisprudence,

5th Ed., § 1031, p. 61; Restatement, Trusts, § 404. In this respect, the theory of a resulting trust differs from that of a constructive trust which arises without regard to the intention of the parties and, actually, in most cases, contrary to the intention of the transferee. In our case we are treating with a resulting trust of a general type or form arising where a purchase has been made and the legal estate is conveyed to one party but the purchase price or consideration is paid by another. In a resulting trust of this type it is assumed that the conveyance to the alleged trustee was with knowledge and consent, express or implied, of the alleged beneficiary. Vol. IV, Pomeroy's Equity Jurisprudence, 5th Ed., § 1037, p. 71, at page 75. Consequently, it would seem obvious it was not material in this case that plaintiff should allege that she and her husband did not know of, or consent to the conveyance to defendants. In some states, however, the instant form of resulting trust is not recognized or has been abolished by statute. Vol. IV, Pomeroy's Equity Jurisprudence, 5th Ed., § 1042, p. 87. In those states in some cases it has been held essential to plead and prove that the alleged beneficiary did not know of, or consent to the conveyance to the alleged trustee. See the cases cited in the footnote supporting the text of Corpus Juris, and of Corpus Juris Secundum, supra.

Plaintiff's amended petition contained the allegation (quoted supra) that she was authorized by the Probate Court of St. Charles County to collect and institute actions for the recovery of her husband's assets. It was shown in evidence that the Probate Court had refused letters of administration on the estate of Hugo on the recited ground that the amount of assets of Hugo's estate was not greater than the amount allowed by law as the absolute property of the widow. The Probate Court's order further directed that Hugo's estate, consisting only of a demand or claim against defendants herein, should be collected and retained by plaintiff as her absolute property. Moreover, plaintiff's claim herein is in the assertion of a right to an

interest equitable in nature. We have detailed evidence tending to show that the Tecumseh Street property was bought for the parents, and we infer the title to the St. Louis rental property (out of the proceeds of the sale of which property the parents retired the building and loan encumbrance) was vested in the parents jointly. It would seem the claim is for the establishment of an equitable interest or estate in land of which equitable interest or estate plaintiff and her husband were *jointly* vested during his lifetime—an equitable estate in them by the entireties. Therefore (assuming plaintiff's claim is valid), we think it would not be unsound for us to say that when Hugo died plaintiff alone remained vested with the entire equitable estate, and that she now has the sole right to maintain this equitable action to establish her claim to the whole beneficial interest or estate in the property, and to compel defendants to convey the legal title to her.

■ In stating her claim in two counts, plaintiff was stating a claim and praying for alternative relief. In Count I, plaintiff was seeking the relief of a declaration of a trust, and alternatively, in Count II, in the event she was not entitled to the relief sought in Count I, plaintiff was seeking a money judgment for the amounts she (and her husband Hugo) had paid in retiring an encumbrance on the property, and in the payment of taxes, insurance and maintenance. There was one claim, but alternative relief of different types was demanded. Prayers for alternative relief are recognized by statute. Section 509.050 RSMo 1949, V.A.M.S. So the trial court, in entering a judgment declaring a resulting trust and directing a conveyance of the described property by defendants to plaintiff, adjudicated plaintiff's claim favorably to her on her theory of a resulting trust, and thereby rendered unnecessary a consideration and determination of plaintiff's claim as stated for alternative relief in Count II. Thus the decree establishing a resulting trust by obvious intendment finally determined all of the issues of plaintiff's claim by determining her claim and affording relief favorably to her as stated and prayed for in Count I. No issues then were or remained to be decided as to Count II.

We hold that plaintiff stated a claim for equitable relief by way of the declaration of a resulting trust; that she had the sole ownership of the chose and had the right to maintain the action in her individual capacity; and that the trial court's judgment and decree adjudicating and declaring a trust was an adjudication of all the issues of the case.

■ Attending now a review of the evidence and the determination of the contention that the evidence was insufficient in quantity and quality to establish a resulting trust—

It is true as argued by defendants-appellants that, in an action to establish a trust by parol and to ingraft it on the legal title to land, a mere preponderance of evidence is insufficient to support relief. A higher degree or quality of proof is necessary. The evidence must be clear, cogent and convincing. And in reviewing such a case the appellate court is not bound by the trial chancellor's findings, but must review the cause by a trial *de novo,* weigh and evaluate the competent evidence introduced tending to prove or refute the essential factual issues and reach its own conclusions, usually giving deference, however, to the trial chancellor's findings where there is conflicting oral testimony involving a judging of the credibility of the witnesses who personally appeared before him. Little v. Mettee, 338 Mo. 1223, 1228, 93 S.W.2d 1000; Purvis v. Hardin, supra; Middelton v. Reece, supra; Jacobs v. Jacobs, supra.

In reviewing the evidence introduced in this case, we have come to the conclusion that the evidence is clear and convincing in tending to and does establish a resulting trust. In arriving at this conclusion we have deferred to the trial chancellor's apparent views on the credibility of the witnesses. Here we have the circumstance that the parents (plaintiff and her husband Hugo) were desirous of removing from New Melle where the husband had no employment to St. Charles where he could

get employment. They wished to rent or buy a home for themselves. Specifically, defendant Mathilda testified that the parents wanted to come to St. Charles and they didn't have any money and they couldn't rent anything, "so they asked us if we wouldn't find a place *for them to rent or buy.*" She said they, defendants, came to St. Charles and interviewed various real estate people and "I was the one that *spoke for the plaintiffs.*" This testimony of defendant Mathilda is in harmony with the testimony of plaintiff Lulu when she said, "We asked him (defendant Raymond) if he could find a place for us here in St. Charles and he did." We also give credence, as the trial chancellor apparently did, to the testimony of the brother Victor—Raymond had said that he had gone down to the loan company "and told the loan people that *the folks wanted to borrow some money.* * * * Yes; he told me it was all Mom's, there was nothing he could do about it."

We now allude to the fact that the parents had their money "tied up" in the St. Louis rental property. They had no money available at the time to put in the purchase price of the property in St. Charles. Defendant Raymond or his wife Mathilda, however, had available the sum of one thousand dollars which was paid by Raymond to the grantors, and defendant Raymond borrowed the remainder of the purchase money from the St. Charles Building and Loan Association, executing a deed of trust on the property to secure the loan.

There is here solid foundation and clearly room for the conclusion that defendants advanced or lent the $1,000 to the parents, and that defendants, upon being vested with the legal title, borrowed $3,000 to the use of the parents from the building and loan association to make up the remainder and completely pay the consideration for the property. In a case of a resulting trust of a kind as herein contended, although the transferee, alleged trustee, pays the purchase money directly to vendor and takes title in his own name, a resulting trust nevertheless may arise if the payment was not made for himself but for another—for example, suppose B lends money to A in order that A may purchase land from X, but B pays the purchase money directly to X and takes title in his own name. Here, although B pays the purchase money directly to X, yet in substance it is A's money, being money lent to A by B. Vol. III, Scott, The Law of Trusts, § 448 pp. 2270–2271. See now Scott v. Ferguson, 235 Mo. 576, 139 S.W. 102, 103, wherein this court approvingly quoted Perry on Trusts and Trustees, as follows, " 'On the other hand, if one should advance the purchase money and take the title to himself, but should do this wholly upon the account and credit of the other, he would hold the estate upon a resulting trust for the other. And if partly on the account and credit of another, he would hold as trustee pro tanto.' " See also Clowser v. Noland, 133 Mo. 221, 34 S.W. 64; Mays v. Jackson, 346 Mo. 1224, 145 S.W.2d 392.

The real estate broker was under the impression that the parents were going to live in the property and pay off the loan "and pay Raymond back" when the parents sold their St. Louis property. Defendants have not contended the parents in any way contemplated a gift to their son, defendant Raymond. While we do not give great weight to the "impression" of the witness, we have observed that the witness seemed to remember that when the deed was made out the title was put in defendants—the reason was "to protect his (Raymond's) thousand dollars." This testimony, the testimony of plaintiff Lulu, and of defendant Mathilda which we have quoted and italicized supra, further indicates to us that at the time of the transaction the title to the property was put in defendants, but to the benefit of the parents with no intention that defendants would have any beneficial interest or estate. We have also noticed that another witness said that the parents were questioning about the best way to take title. They asked, "Shall we take it in our name or shall we put the title in the name of our son?" The last-mentioned witness remarked that some years ago

something was said by defendant Raymond about the preparation of a deed to his mother. Actually, there seems to have been no conduct on the part of the parties (plaintiff and her husband, and defendants) supporting the theory that defendants were vested with the beneficial interest, until defendants were obliged to vacate the rental property they had formerly occupied in St. Louis. This was sometime in 1950. Meanwhile, the parents had retired the indebtedness to the St. Charles Building and Loan Association and, being desirous of getting the title in their own names, they requested and were refused a conveyance from defendants. We have noted that plaintiff Lulu and her husband had paid the taxes to and including the year 1950; they inquired about the taxes thereafter, but found the taxes already had been paid. There was testimony that the parents offered defendants $6,000 (or $6,500) for the property in 1950 or 1951. We do not hold this circumstance as decisively against plaintiff's claim, as we do not wish to say that the parents were not reasonably acting, in the circumstances, with the view of settling the controversy and procuring an absolute conveyance from their son Raymond which conveyance he had refused.

We do not hesitate to affirm the trial court's judgment in decreeing a resulting trust in plaintiff; however, as stated supra, defendants advanced $1,000 of the purchase price; paid taxes in the amount of $182.48; insurance, $316.35; repairs, $125.03; closing expense, $18.00; three installments on the encumbrance aggregating $75.96; all in total amount of $1,717.82. As stated the trial court required plaintiff to pay $1,464.16. We think the amount, $1,717.82, advanced to plaintiff's use should be paid by plaintiff to defendants, but without interest. The trial court's judgment is accordingly modified so as to order defendants to convey the described real estate to plaintiff upon her payment of $1,717.82 within ninety days after this court's judgment becomes final, and otherwise the trial court's judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.