HENRIETTA FREY, v. LORETTA ONSTOTT, Appellant.—No. 40601.—210 S. W. (2d) 87.

Division One, April 12, 1948.

*John C. Kappel, Jr.*, and *Walter S. Berkman* for appellant.

722

*Francis R. Stout* and *Richard M. Stout* for respondent.

[88] DALTON, C.—Action in equity to determine title to described real estate in the City of St. Louis and for other relief, with a cross action for the value of services, et certera, in the event that equitable relief was granted to plaintiff. Equitable relief was granted, but defendant's counterclaim was denied. Defendant has appealed.

In view of the issues presented, a careful review of the pleadings and evidence is required. Respondent (plaintiff) prayed the court (1) to quiet and determine title to described real estate; (2) to declare [89] null and void an alleged warranty deed executed by respondent, dated October 7, 1942, which purported to convey the described property to appellant; (3) to require an accounting by appellant of all rents collected; and (4) to enjoin appellant from claiming any right, title or interest in the described property.

Respondent alleged that she was the owner of the described property; that she had executed and recorded the deed purporting to convey fee simple title to appellant, but that the deed was void for specified reasons; and that appellant claimed thereunder the right to collect and receive rents, and had refused to return the property to appellant by executing a proper conveyance. Respondent charged (1) that the deed was void because made without any consideration; (2) that it was made without any intention to convey the absolute title in fee, or any other actual ownership to appellant; and (3) that it was obtained by fraud and an abuse of an alleged confidential relationship existing between respondent and appellant, which relationship appellant had invited and accepted. The alleged lack of intention to convey an absolute title in fee was based upon the alleged fact that appellant had agreed and promised (at the time of the delivery of said deed) to reconvey the property on demand and respondent had relied upon the promise.

Appellant admitted the deed had been executed, but alleged that it was made by respondent with a full knowledge and understanding of what she was doing. Appellant denied the alleged want of consideration, the agreement to reconvey on demand and the fiduciary relationship and fraud. Appellant alleged (1) that the deed was executed for a valid consideration, towit, in consideration of an existing $2,000 indebtedness due from respondent to appellant and in consideration of future board and lodging which respondent desired to receive of appellant; and (2) that, if any agreement was made to reconvey, it was not in writing and was unenforceable because within the statute of frauds. (Sec. 3494 R. S. 1939).

For her cross action, appellant alleged that she had performed certain services, et cetera, for respondent for which she (appellant) was entitled to compensation in the sum of $3840.00, less certain rents collected. Appellant asked that, in the event the court found the conveyance of the described property was made "without intention to convey the absolute title in fee or actual ownership thereof to defendant," appellant be awarded judgment against respondent for $3750.40.

The evidence shows that respondent met appellant in 1934 and they became and remained very close personal friends. Respondent had been a nurse. She discontinued that occupation in 1938, acquired the described property, a two story two apartment flat, and moved into one of the apartments. She had not previously owned any real estate. Respondent's nearest relatives were two nieces with whom she had had little or no contact in recent years.

Apparently respondent had a faculty for getting into difficulties and, on several occasions, she had had to secure the services and advice of an attorney. One of these difficulties involved the purchase of a chicken farm and another a dispute with a tenant. Appellant visited respondent often and sometimes accompanied respondent to the attorney's office. Respondent at no time consulted appellant about her investments, contracts or other business transactions. About 1940, some real estate man came to see respondent and wanted to buy her property. She signed a listing card of some kind. She thought the price was good at the time, but later decided she didn't want to sell. Further, she felt she had been tricked into signing the card and she consulted a lawyer and he got her out of the difficulty.

The present difficulty grows out of the execution of a warranty deed purporting to convey the property to appellant on October 7, 1942. At that time respondent was about 70 years of age and appellant was some 32 years younger. The property was worth around $14,000. Respondent testified: "Well, I got nervous because I had signed a card with O'Rourke and I heard [90] that I had signed my rights away. . . . I was getting old and I didn't know just what to do. . . . I was kind of afraid of myself. . . . Well, I

thought she (appellant) was a faithful friend, and I asked her to take it over because I didn't feel quite sure of myself any more, and she faithfully promised to return it, whenever I was ready. She said she would go right down to the court house and turn it back, as a faithful friend. . . . I asked her to (take it over) because I thought I was too old to sign anything else. . . . I was just trying to keep my property."

Respondent first mentioned the matter to appellant, but appellant thought it was a good idea and agreed to take the title. According to respondent, neither of them knew "how to go at it," but that night a friend of appellant's told her to have it signed over and whenever respondent wanted it she could have it signed back. After the friend left, appellant drove down to respondent's home some ten miles away, and arrived there between ten and eleven o'clock in the evening. Respondent testified: "She (appellant) came down that evening and told me we were going to the court house the next morning to have it turned over to her." They "went down the next morning and took care of it." On the way to the city hall, they stopped and got some papers out of respondent's safe-deposit box. Respondent did not know just what papers, but appellant "thought it best to have them." Concerning what happened at the city hall, respondent testified: "Well, Mrs. Onstott tended to it down there, what she did; I don't know. She asked me to set down and take care of Ethel Mae (appellant's child) while she attended to things. . . . Well, she asked me would I come and sign it, and I said 'Yes.' "

. . .

"Q. Tell the Court why you signed this deed? A. Just to save my property. Q. Did you know that in signing this deed you were transferring title to your property to Mrs. Onstott? A. No. Q. Well, then, why did you sign it, Miss Frey? A. Well, as I said, I was just too old—to sign it over for the time being; then I was to get it back any time I wanted. Q. Now, let's go back. You stated it was your idea to take the property and put it in Mrs. Onstott's name? A. To save it, yes; to save it. Q. But didn't you tell me you wanted to transfer title of your property to Mrs. Onstott for that purpose? A. To save the property. Q. Yes, ma'am; but didn't you know you were transferring the title to Mrs. Onstott? A. No, I did not. Q. Well, then, did you know a deed was going to be prepared down town. A. No. Q. Do you know why you went to the City Hall to have the deed drawn? A. Just to turn it over until . . . Q. Well, did you know you were turning your property over at all to Mrs. Onstott? A. No. Q. In other words, you don't know why you signed this deed at all? A. I did sign it for the time being, to get it back. . . . Q. Miss Frey, did you know you were putting your property in Mrs. Onstott's name when you signed this deed? A. Yes, for the time being."

The deed bore no United States revenue stamps. It recited a consideration of one dollar, but no sum was actually paid or promised. Respondent was not indebted to appellant at the time. After the deed was executed it was placed in respondent's safe-deposit box and it remained there. Thereafter, appellant begged respondent to move to appellant's home. In 1944, respondent moved there and continued to live with appellant until November 12, 1946. Respondent paid board. She also took care of appellant's daughter, so appellant could work. Respondent often worked for appellant and appellant worked for respondent, no charges were made by one against the other, everything was done in friendship. After the deed had been placed in respondent's safe-deposit box, appellant asked respondent to have the box made a joint box and respondent did so. Appellant further asked respondent to [91] have her bank accounts made payable to their joint names, but respondent refused.

On cross-examination respondent further testified: "Q. Now, did Mrs. Onstott in writing ever agree to give back the property? A. No. Q. Her agreement, if any, was oral spoken; is that correct? A. We never spoke about it. Q. But she never signed anything in writing to the effect that she would give it back to you, did she? A. Well, there was, but I can't find it any more. Q. Well, now, was there or wasn't there, Miss Frey? A. There was. She had promised to sign to return it whenever I was ready. Q. And who prepared that paper? A. Well, I guess it was at the Deed's office. Q. What did you do with the paper after you got it? A. I put it in may safe-deposit box. Q. Did Mrs. Onstott have a key to your safe-deposit box? A. No, but she went through it when I was with her. Q. Do you contend that Mrs. Onstott took that piece of paper? A. I don't know; it disappeared. Q. Was it prepared at the same time the deed was prepared? A. Yes. Q. Do you know what the agreement said? A. No, I don't remember. Q. Did you ever read it? A. At first; yes. Q. Did you read the deed? A. No."

Respondent further said that, at the time the deed was made, she had appellant's agreement in writing to return the property; that it was typewritten on a small piece of paper; and that both the deed and the paper had been in the safe-deposit box, but now she had only the deed.

After respondent moved to appellant's home, they always went together wherever they went. Appellant collected the rents from the property and turned them over to respondent until November 12, 1946. Respondent paid all taxes, the cost of repairs and the cost of a public liability policy. Appellant thought the policy "would be a good idea."

In November 1946, respondent consulted an attorney and was advised the listing contract, which she had signed with the real estate man (apparently in 1940) "was no good"; and that she could get

her property back. About the same time appellant removed a tree from the premises without respondent's consent and respondent did not like it. Appellant further was delaying, sometimes a few weeks, to sign over the rent checks and respondent demanded a return of the property. Appellant "got very ugly" and respondent left appellant's home and immediately had a written demand for the return of the property served on appellant on November 16, 1946. The property not being reconveyed, suit was instituted November 18, 1946.

Appellant did not testify in her own behalf, but offered as a witness the notary public who supervised the deed's preparation and took the acknowledgment. He was a deputy recorder of deeds and said that both of the parties were present and requested a transfer of the property from one to the other, a direct conveyance; that no reservations or restrictions were mentioned; and that no other document had been prepared or signed. Another witness testified concerning the painting and repair of the property by appellant and her husband and respondent. No evidence was offered in support of appellant's counterclaim.

The trial court found that the parties were close personal friends; that respondent had no close relatives or others upon whom she relied; that appellant was respondent's closest friend; that there was no consideration for the deed; that respondent had recorded it, retained it in her possession and had it at the trial; that, at the time the deed was executed, neither of the parties intended that it should convey the absolute title in fee to the grantee, appellant; that respondent had had little business experience and because of signing some contract, or because of what other parties had told her, she feared she would lose her property; that respondent no longer trusted herself to hold title; that, [92] prior to the conveyance, appellant agreed with respondent she would reconvey the property to respondent when requested; that the conveyance was made in reliance upon this promise; that, after the execution of the deed, respondent continued to have full possession and control of the property and did not deliver possession to appellant; that, prior to November 12, 1946, appellant turned over to respondent the rents that were collected and respondent paid all taxes and expense on the property; that respondent had demanded reconveyance and reconveyance had been refused; that appellant had received the rents since November 15, 1946, and had refused to turn them over; and that appellant had been present in the court room throughout the trial of the case, but did not testify. The court reviewed the evidence concerning "the typewritten paper signed by defendant," but made no direct finding thereon. As stated, the relief prayed by respondent was granted and appellant's counterclaim was denied.

In her printed argument, appellant contends that the judgment should be reversed and the cause remanded with directions to dismiss the petition. No errors are assigned or pointed out under "points relied on." Instead, appellant has set out only abstract statements of well recognized principles of law. In the argument appellant contends (1) that respondent did not allege in her petition that appellant's agreement to reconvey was in writing and had been lost and destroyed; (2) that the court made no finding that a memorandum in writing had been executed and lost; (3) that the oral promise of appellant to reconvey was void and unenforceable as an express trust; (4) that the oral promise to reconvey constituted neither a resulting nor a constructive trust; (5) that no business or fiduciary relationship between the parties was shown; (6) that neither the failure of appellant to reconvey in accordance with the alleged oral agreement, nor the denial of the existence of the trust, raised a constructive trust or gave any right of action; and (7) that the record contained no evidence of fraud and none was found by the court. Appellant relies particularly upon the case of Parker v. Blakeley, 338 Mo. 1189, 93 S. W. (2d) 981, from which opinion she quotes at length. In view of the conclusion we have reached it will be necessary only to consider the last mentioned contention of appellant.

Respondent relies upon the rule stated in Cook v. Branine, 341 Mo. 273, 107 S. W. (2d) 28, 32, as follows: "It is settled law that where a deed is made without consideration and without intention to convey the absolute title in fee to the grantee, on refusal of the grantee to return the property to the grantor upon his demand, equity will intervene and grant relief." In that case the grantor (plaintiff) had been in ill health and, on request, he executed and delivered deeds in due form conveying his interest in certain real estate to his sister. He understood his sister was to look after the property. She had previously told him that, if he would deed the property to her, she would deed it back to him at some future time. The court found that there was no consideration for the deed and no intention to make a gift of the property, and held it was unnecessary to determine the issues of duress and undue influence, but affirmed the decree setting the conveyances aside. In the case of Mentzer v. Mentzer, 325 Mo. 941, 30 S. W. (2d) 146, 148, relied upon in the case of Cook v. Branine, supra, the court said: "Plaintiffs in error misconceive the case when they assume that the judgment must rest solely on the ground of want of consideration for the deed. There was ample evidence from which the court could, and as above indicated, did, conclude that the grantor never intended by this conveyance to give the property described in the deed to the grantees named therein, and hence no title passed. Their refusal to return the property to plaintiff on his demand under the circumstances in evi-

dence warranted equitable intervention." See, also, Snitzer v. Pokres, 324 Mo. 386, 23 S. W. (2d) 155.

While the record here and the cases cited, supra, appear to support the conclusions and decree of the trial court, we [93] think the cases relied upon do not fully discuss the principles of law involved or the basis upon which the decisions rest. In this situation, we shall further review the issues presented here. See, Colquitt v. Lowe, (Mo. Sup.), 184 S. W. (2d) 420, 423.

The record shows a voluntary transfer of respondent's valuable property to appellant for a recited consideration of $1.00. Under the facts in evidence, there is no presumption of gift and the evidence shows that no gift of the property was intended. Appellant does not claim the property as a gift. Had she so claimed, we would have a very different situation. See, Wilkerson v. Wann, 322 Mo. 842, 16 S. W. (2d) 72, 75. Appellant, in her answer, alleged that the deed was supported by a valid consideration, towit, a $2,000 indebtedness of respondent to appellant and future board and lodging which respondent was to receive from appellant. There was no evidence to sustain these allegations. On the evidence presented there was no consideration for the conveyance, other than the recital shown in the deed. This recital was sufficient to support the deed as a conveyance. See, Palmer v. Palmer, (Mo. Sup.), 238 S. W. 423, 424, and cases there cited. The true facts, however, were open to consideration by a court of equity, not for the purpose of determining whether the consideration recited was sufficient to make the deed operative and to prevent a resulting trust, but to determine the issue of fraud. While it is true that fraud was not expressly named in the petition, the facts pleaded therein and, subsequently, shown in connection with the evidence tending to show want of consideration and the alleged fiduciary relationship sufficiently presented the charge of fraud. Laws 1943, p. 353, Sec. 47, R. S. A., Sec. 847.47. Appellant recognizes the issue of fraud, but insists there was no evidence to sustain it because neither the denial of the verbal agreement to reconvey nor the violation of the agreement constituted fraud. Parker v. Blakeley, supra. In the Parker case no actual or constructive fraud was pleaded or shown.

As stated, the parties were not related by blood. No gift of the property was intended. No consideration was paid by appellant. The real estate was worth approximately $14,000. On these facts alone, excluding from our consideration the evidence of the oral or written agreement to reconvey, the conveyance operated as a fraud upon respondent. Without attempting to impeach the recited consideration shown in the deed, it clearly appears there was no other consideration and the consideration recited was so grossly inadequate as to shock the conscience and furnish evidence of fraud. The applicable rule is well stated in Derby v. Donahoe, 208 Mo. 684, 706, 106 S.

W. 632, where this court quoted with approval from Nelson v. Betts, 21 Mo. App. 219, 231, as follows: " 'The general rule is that mere inadequacy of price or consideration is no ground for claiming the the rescission of a contract in equity. . . . Equity does not undertake to act as the guardian of mankind. It does not aid people who make foolish bargains. But there are exceptions to the rule, which apply with peculair force, where the parties do not stand in equal positions, do not possess equal knowledge, and where there are circumstances of fraud and oppression, on the one part, and of distress and submission, on the other. . . . In many such cases a shocking inadequacy of price or of consideration, without more, is held to be evidence of fraud, and courts of equity grant relief, not on the ground of inadequacy of consideration, but on the ground of fraud shown by the shocking inadequacy of consideration. As stated by the writer already quoted from: "Inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling a transaction. In such cases the relief is granted, not on the ground of inadequacy of consideration, but on the ground of fraud as evidenced thereby." [Kerr on Fraud and Mistake, 161, citing many authorities.' "] See, also, Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S. W. (2d) 813, 815; 26 C. J. S. 285, Sec. 60; 16 Am. Jur. 456, Deeds, Sec. 33; 9 Am Jur. 372, Cancellation of Instruments, Sec. 26. On the issue of fraud we further consider the evidence of [94] respondent's age and weaknesses, her close friendship for and association with appellant, the disparity of age between them, respondent's trust and confidence in appellant (independent of any fiduciary relationship) evidenced by her execution of the deed without reading it, appellant's prompt action in taking undue advantage of respondent when the opportunity presented itself and appellant's selection of the scrivener and supervision of the execution of the deed. It is well settled that fraud may be inferred from facts and circumstances and need not be shown by direct evidence. Black v. Epstein, 221 Mo. 286, 310, 120 S. W. 754; Castorina v. Herrmann, 340 Mo. 1026, 104 S. W. (2d) 297, 302.

It further appears that appellant claimed to be a purchaser for value, but, when confronted by evidence of fraud sufficient to make a prima facie case, she failed to testify to matters peculiarly within her knowledge and no explanation for such failure appears of record. The trial court found that she was present in the court room throughout the trial. Accordingly, we draw the inference that the truth would not have aided her cause and her testimony would have been unfavorable. O'Day v. Van Leeuwen, 354 Mo. 604, 190 S. W. (2d) 263, 265; Bostwick v. Freeman, 349 Mo. 1, 160 S. W. (2d) 713, 716. We think that fraud was clearly shown by the record in this case.

It will be unnecessary to determine other issues presented. The "clean hands" doctrine of equity is not assigned as a ground for denying relief and, under the facts here, it should not be applied. Mentzer v. Mentzer, supra; Snitzer v. Pokres, supra.

The judgment is affirmed. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.