Ocellous ELLIS, Respondent,

v.

Joseph R. WILLIAMS et al., Respondents,

Harriet Lamb Williams, Intervenor-Appellant.

No. 45824.

Supreme Court of Missouri.

Division No. 2.

April 14, 1958.

Wilson Gray, St. Louis, for intervener-appellant, Harriet Lamb Williams.

David E. Horn, St. Louis, for (plaintiff) respondent Ocellous Ellis.

EAGER, Judge.

This suit was instituted as one in partition between the many heirs of one Reaf F. Williams, deceased. The administrators of deceased were also joined as defendants. The action involves title to a tract of real estate on North Market Street in the City of St. Louis, on which there is an apartment building. We are not primarily concerned here with the partition proceedings as such. Harriet Lamb Williams, the divorced wife of Williams, was permitted to intervene, and she filed her intervening and amended intervening petitions, each in two counts. In the first count she sought to establish a resulting trust in her favor in an undivided half interest in the property and to procure an accounting of rents; this, upon the theory that she and the deceased had bought the property jointly in anticipation of marriage, each furnishing one-half of the down payment, with title to be held jointly, but that he had wrongfully taken title in his name alone. In the second count she sought the assignment of dower in the other undivided one-half interest, she having been adjudged the innocent and injured party in the divorce proceeding. As a dower claimant she was a proper party to the partition. Phelps v. Domville, Mo., 303 S.W.2d 601. The plaintiff and all the defendants in the original proceedings opposed her claims in their entirety. The trial court found against the intervenor on both counts and entered judgment accordingly. It also entered an interlocutory decree in partition, fixing the respective interests of the other parties, and ordering a sale. Generally, the heirs denied the essential allegations of the intervenor, and they alleged affirmatively that she had waived and released her claims to dower. The case in its entirety was tried to the court, although certain issues were primarily legal. See Rowley v. Rowley, Mo., 197 S.W. 152; and § 469.250, concerning suits for the assignment of dower. (All statutory references are to RSMo 1949 and V.A.M.S.)

The evidence here was somewhat sketchy and confusing, due partly to the fact that Reaf Williams was dead, and on many subjects the intervenor was precluded from testifying by § 491.010, but also to the hiatuses caused by a multitude of objections. We do not say this critically. In essence the following facts were fairly shown: Reaf Williams died on May 23, 1953, intestate, and without children. Intervenor, a schoolteacher, had become engaged to marry him, at some undetermined date about 1927, and they were married in July, 1927. Under date of May 18, 1927, the property in question was conveyed to Reaf F. Williams by one Ely Sanders, for a recited consideration of $100 and subject to a deed of. trust for. $9,000; this warranty deed was recorded on May 24, 1927. We may fairly infer

that intervenor's position is that she never saw this deed. Thereafter Reaf Williams and this intervenor, as his wife, executed deeds of trust as follows: a first deed of trust dated January 5, 1928, securing an indebtedness of $7,500; a second deed of trust of the same date securing an indebtedness of $4,844 "borrowed money"; a Home Owners Loan Corporation first deed of trust dated September 12, 1934, securing an indebtedness of $7,701; and a second deed of trust dated September 12, 1934, acknowledged September 26, 1934, securing an indebtedness of $476.37. The intervenor offered in evidence certain of the notes executed by her; some were admitted and some were excluded, but we think the matter immaterial. We may assume that one or more of these deeds of trust replaced the indebtedness existing at the time of the original acquisition. We may also fairly conclude from the record: that all indebtedness against the property was paid and released prior to the death of Reaf Williams; and that he had collected most of the rents, although intervenor had collected rents on certain occasions. There is reference in the record to the foreclosure of the second deed of trust securing an indebtedness of $4,844 (supra); an offer was made of a trustee's deed pursuant thereto and dated February 5, 1930, to Margaret Overmire; also, an offer of a warranty deed from the latter to Olaf Rosenorn and wife. These offers were by reference only and the exhibits are not here; there was also offered a deed from Rosenorn and wife to Reaf F. Williams dated February 8, 1930, and recorded on October 20, 1934. That exhibit is not here. The apparent object of these offers was to show the acquisition by Reaf Williams of an independent and subsequent title, but in the view we take of the case, these exhibits are not material.

For the establishment of a resulting trust intervenor relied upon the evidence now to be related. She had a savings account in the Mercantile Trust Company from November, 1926 to December, 1927; she "drew" a cashier's check for $500 on May 19, 1927; her savings account showed a $500 withdrawal on May 19, 1927; she later had a saving account in the Easton-Taylor Trust Co., and she and her husband had a joint checking account there from July, 1927 to January, 1929. One witness (Sophronia Gibbs) testified that shortly after the wedding Williams took her to see this property and said that "him and Harriet had purchased a place" and that each paid half, a total of $1,000; another (James Webb) testified that about 1931 Williams said, with reference to the possible rental of an apartment, that his wife "was part owner, or owned the building—I disremember * * *"; another (Josephine Banks) testified that at about the time of the wedding Williams said that he and Harriet were buying the place and "were going 50-50"; another (Albert Keown) testified that about 1942 Williams talked with him about trading houses and said that "he and his wife owned the house" and that it was a flat; another (Adele Harrell) testified that she became well acquainted with Williams about 1939–1940, at one time was "engaged" to him, and that about 1940 he stated that "he and his wife had purchased the property before they were married"; and the last (Frank Clegg, a lawyer) testified that when he sought to get Williams to sign a replevin bond about 1927 or 1928, the latter stated that he and "Miss Lamb" had purchased the property, and that "she had a half interest or something * * *." Strenuous, but unavailing, efforts were made to introduce what appeared to be a photostatic copy of a cashier's check of the Mercantile Trust Company for $500, dated May 19, 1927, and payable to Harriet L. Lamb. Bank officials were produced; one said that he recognized the photograph of the signature of a Mr. Kruse, formerly Assistant Treasurer, whose name purported to be signed thereon, and also recognized the photographs of the clearing house stamps; and one testified that all originals earlier than 1942 had been destroyed. No one testified that he had ever seen the original or that the exhibit was a true

copy. It was excluded by the trial court. Intervenor stated, as was obvious, that she did not have the original. There was evidence that the real estate in question was worth from twelve to fourteen thousand dollars. The intervenor procured a divorce from Reaf Williams, for his fault, on January 25, 1945, after filing previous petitions in 1930 and 1938, which apparently were dismissed voluntarily. Intervenor offered in evidence a recorded copy (or duplicate original) of her election to take as "Substitute Dower," one-half of the real and personal property belonging to Williams at the time of his death, subject to the payment of his debts; that election was dated and acknowledged on April 15, 1954, and it was filed in the recorder's office on September 11, 1954. This was excluded upon objections made that it was immaterial, that intervenor was not the widow, that it was self-serving, and by reason of "Section 491.010, the dead man section." Our rulings concerning the amended intervening petition will also rule a pleading which the intervenor designated as a counterclaim.

■ It will be impossible to discuss the many points, subpoints, and cited authorities in intervenor-appellant's brief. We shall discuss their substance. First, she complains vigorously of the court's errors in the exclusion of evidence, including some of her own proffered testimony, the supposed photograph of the cashier's check, and her proposed identity of various signatures. The exclusion of evidence in an equity or court-tried case is of little importance where the evidence excluded or its substance appears from the record, for this court may consider all competent evidence. Brooks v. Brooks, 357 Mo. 343, 208 S.W.2d 279, 285, 4 A.L.R.2d 826; Edinger v. Kratzer, Mo., 175 S.W.2d 807, 811; Balding v. Farm & Home Savings & Loan Ass'n, Mo. App., 131 S.W.2d 57; § 510.310. Of intervenor's oral testimony, the parts excluded were wholly immaterial; as concerns her attempted identification of certain exhibits and of signatures on exhibits, all of these,

in so far as they may possibly have been material, were received later with the exception of the purported copy of the cashier's check. For the purpose of this appeal, we shall consider the copy of the check as though it had been admitted, although its admissibility was and is doubtful. We shall consider later the intervenor's "Election To Take Substitute Dower," which should have been admitted.

■ Concededly, this property was conveyed to Reaf F. Williams alone, and the title remained in his name until his death. Intervenor's claim under her first count is predicated solely upon the theory of a resulting trust, arising from the asserted fact that she and Williams purchased the property jointly, intending that it should be held and enjoyed jointly. As stated in Jacobs v. Jacobs, Mo., 272 S.W.2d 185, 188: "'A resulting trust, as distinguished from an express trust, is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and attend the transaction out of which it arises.' Little v. Mettee, 338 Mo. 1223, 93 S.W.2d 1000, 1009(8, 9)." Usually the claimed cestui must have furnished the consideration, or a fixed proportionate part, and there must be a presumed intent on the part of the legal owner to hold for such beneficiary; and the trust arises by implication from the facts and circumstances, rather than from express agreement. Swon v. Huddleston, Mo., 282 S.W.2d 18, 25. Intention is an essential element. Meyer v. Meyer, Mo., 285 S.W.2d 694, 698. The trust must arise at the time the title is acquired. Jacobs, supra. And generally, if the alleged trust is not of the whole of the property, the proportionate interest must be definitely shown. Jacobs, supra; Shelby v. Shelby, 357 Mo. 557, 209 S.W.2d 896; and, as illustrating the complications which arise when one claims a resulting trust by reason of making a part payment upon the purchase, see: Scott on Trusts, 2nd Ed., Vol. IV, § 454, pp. 3061–3069; 54 Am.Jur., Trusts, § 216, pp. 166–167.

It seems hardly necessary to repeat the oft-stated doctrine that the proof to establish a resulting trust must be clear, cogent and convincing; the law requires conveyances of real estate to be in writing, and no presumption of a trust can arise until after the basic facts are proven. Adams v. Adams, 348 Mo. 1041, 156 S.W.2d 610, 614. It has further been held that oral evidence to establish a trust in opposition to the record title must be so clear and convincing "as to exclude all doubt from the mind of the court." Swon v. Huddleston, supra, citing various cases at 282 S.W.2d loc. cit. 25. And see also Aronson v. Spitcaufsky, Mo., 260 S.W.2d 548, loc. cit. 549, where this court said: "To establish an implied trust, whether a resulting or constructive trust, an extraordinary degree of proof is required and vague or shadowy evidence or a preponderance of the evidence is not sufficient. The evidence must be so unquestionable in its character, so clear, cogent and convincing that no reasonable doubt can be entertained as to its truth and the existence of the trust. * * *." In our early jurisprudence the courts warned that testimony as to verbal admissions of persons, since deceased, should be received with great caution. Ringo v. Richardson, 53 Mo. 385; and particularly so, when offered for the purpose of divesting a title created by deed. Johnson v. Quarles, 46 Mo. 423.

The claim of a resulting trust here rests primarily upon the oral testimony of several witnesses to the effect that Williams had said, in more or less casual conversations, and at times varying from about 1927 to 1940, that he and intervenor had bought the place together, or "50-50," or that she was "part owner"; one stated that he said the down payment was $1,000. The verbiage recited varied greatly, and some of the statements were highly ambiguous. Of the two persons who gave the most nearly definite testimony, one was intervenor's godmother who had known her since she was born, and the other was a high school friend who had been an attendant at her wedding. The trial court found, in its memorandum opinion, that intervenor's evidence was "not sufficiently clear and convincing to establish a resulting trust * * *." It is apparent that he either disbelieved it or considered it as entirely too indefinite, or both. If we assume that the supposed photograph of the cashier's check was competent, still it was not sufficiently connected up with the purchase of this property to show a payment thereon by the intervenor. It is perhaps unfortunate, from her standpoint, that she was precluded from testifying to the facts, but we cannot change the salutary rule of law provided by § 491.010. The contention that Williams became a tenant in common with intervenor, and could therefore acquire no title against her interest by foreclosure, is immaterial in the light of our present decision; the matter is not being decided on the basis of that foreclosure; and, moreover, the assumption that they were tenants in common assumes the whole foundation of intervenor's claim of a trust.

We must, of course, consider the record independently here, and make our own findings and conclusions. Meyer v. Meyer, Mo., 285 S.W.2d 694, 699. But in doing so, we are permitted to allow some deference to the findings of the trial court where the credibility of oral evidence is involved. Meyer, supra, and cases there cited. From a consideration of the evidence here we may not confidently say that intervenor has established a resulting trust by evidence so clear, cogent and convincing as to exclude all doubt from our minds. Since we hold that there is a failure of proof as to the nature of the original transaction, we need not consider the authorities cited concerning intervenor's right to rely upon her understanding with her husband and upon his representations, without making a search of the records. We do not decide this claim upon the doctrine of laches, but we may appropriately note that the long lapse of time here has naturally weakened the effect of the oral evidence. We note also that in the amended intervening peti-

tion the intervenor alleges, in a wholly inconsistent vein, an understanding with Williams that "all moneys advanced by intervenor from her personal account would be returned to her as soon as possible after the sale was closed * * *." A loan is wholly inconsistent with the theory of a resulting trust. Adams v. Adams, 348 Mo. 1041, 156 S.W.2d 610, 614, and cases cited; Scott on Trusts, 2nd Ed., Vol. IV, § 454, p. 3064. There is no showing here of payments by intervenor upon the various deeds of trust, nor indeed could such payments be material, if shown, unless there was also present the basic and fundamental proof of a resulting trust created at the time of the original purchase. Jacobs v. Jacobs, Mo., 272 S.W.2d 185, 189–190. If we should speculate that these payments were made from rents, this would still not aid the intervenor in the absence of proof of a resulting trust created at the inception of the transaction. The fact that intervenor executed with her husband the various deeds of trust, without further showing, can be of no great materiality; it might indicate a joint ownership, or it might merely have served to release her dower. Moreover, the deeds of trust which intervenor thus executed were all dated subsequent to the original conveyance; they could not, therefore, have changed its character, which had been inalterably fixed as of that time. On Count 1 the judgment of the trial court will be affirmed.

▋ The second count of the amended intervening petition constitutes an ordinary proceeding for the assignment of dower. That is a suit at law. Sec. 469.-250. The whole case was tried to the court without objection. Since Williams died in 1953, we are not concerned with the provisions of the new Probate Code, effective January 1, 1956. Intervenor offered, and the trial court excluded, her election to take one-half of deceased's real and personal property subject to debts, under §§ 469.110 and 469.120 in lieu of the dower as provided by § 469.010; the latter, in essence, is the common law dower. Wallace v. Crank, 324

Mo. 1114, 26 S.W.2d 601. We are met at the outset with the contention of respondents that the intervenor has not preserved her objections to the finding and judgment of the trial court on Count 2 in her motion for a new trial. Rule 3.23. It is true, as suggested, that the assignment that the judgment "is against the law," has been held to preserve nothing. Smith v. Staley, Mo.App., 156 S.W.2d 766, 769. Here, however, the trial court found that on Count 2 the intervenor was estopped by her stipulation which allegedly waived and released her dower. One ground of the motion for new trial is that "there is no evidence in the case upon which to base an estoppel as ruled by the court." Since the stipulation lies at the very heart of the claim of dower, we rule that the intervenor has assigned enough to justify a review. In so doing we are perhaps indulging in some liberality, but we construe the assignment as meaning that the court erred in finding against the intervenor on the basis of her stipulation, which is just what it actually did.

▋ A divorce to a wife, for the fault of the husband, does not bar the wife's inchoate right of dower. § 469.200; North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061; Hunt v. Thompson, 61 Mo. 148. The right of dower in such event does not become consummate, nor may it be assigned, until the death of the husband. See Hunt v. Thompson, supra, for a discussion of the principle and of the divergent statutes. Intervenor apparently suggests that inchoate dower may not be relinquished except by a deed or instrument duly executed and acknowledged. See, for instance, McCoy v. Northwest Elec. Power Co-Op., Mo., 297 S.W.2d 390; First National Bank v. Kirby, 269 Mo. 285, 190 S. W. 597. The statements in such cases are not applicable to a comprehensive property settlement made between husband and wife in contemplation of divorce. Our cases hold, beyond all question, that a husband and wife may in contemplation of divorce fairly and equitably settle all their property rights by contract, including the wife's

rights to dower, alimony and support. And no necessity for an acknowledgment by the wife is indicated. North v. North, 339 Mo. 1226, 100 S.W.2d 582, 109 A.L.R. 1061; State ex rel. Green v. James, 355 Mo. 223, 195 S.W.2d 669; Bloss v. Bloss, Mo., 251 S.W.2d 78; Johns v. McNabb, Mo., 247 S.W.2d 640; Edmondson v. Edmondson, Mo.App., 242 S.W.2d 730; Bishop v. Bishop, Mo.App., 162 S.W.2d 332; Summers v. Summers, Mo.App., 222 S.W.2d 514. But the contract must be fair, based upon valid and legal consideration, and be free from fraud and imposition. See the above cases. So far as we are concerned here, the heirs, plaintiff and defendants, stand in the shoes of Reaf Williams, their ancestor, and no rights of third parties have intervened.

■ This brings us to a consideration of the stipulation upon which respondents rely as constituting a release of dower. Therein, the parties agreed "subject to the approval of the court," in view of the pendency of the divorce suit and the fact that plaintiff "desires that the defendant defray the expenses * * *," that defendant would pay plaintiff "$75 for her attorney's fee and $25 for court cost," and that she waived, released and discharged defendant from all claims for temporary and permanent alimony, and further waived and released all her claims for dower rights in his property, real or personal. The decree of divorce to plaintiff, entered on January 25, 1945, recited that defendant had answered but appeared only by counsel, found the issues generally for the plaintiff, and awarded her a divorce with an attorney's fee of $75 and the costs adjudged against the defendant. There was no stated approval or consideration of this stipulation and the only reference to it was—"Stipulation filed." There was an acknowledgment by plaintiff of satisfaction of the allowance of the attorney's fee. Under these circumstances it appears that the court did not actually consider or approve the stipulation as a settlement of property rights, and indeed a contract for that purpose

does not necessarily need to be submitted to the court. Ellis v. Ellis, Mo., 263 S.W. 2d 849, 852; State ex rel. Green v. James, 355 Mo. 223, 195 S.W.2d 669; Gaede v. Smith, 354 Mo. 738, 190 S.W.2d 931. We hold that this stipulation did not enter into and become a part of the divorce decree. Had it been approved as such and made an integral part of the decree, without some inquiry, we might at least doubt whether the court had fairly exercised its discretion, as applicable to this particular situation.

■ Considering this stipulation on the merits, we regard it, upon its face, as so lacking in consideration, as in itself to be indicative of fraud. Frey v. Onstott, 357 Mo. 721, 210 S.W.2d 87. A divorce court does have the right in some exceptional circumstances, usually based upon the wife's financial ability, to refuse to award temporary alimony or "suit money" to a wife. Summers v. Summers, Mo.App., 222 S.W. 2d 514, 520; Hopkins v. Hopkins, Mo.App., 260 S.W.2d 833; Whitwell v. Whitwell, 318 Mo. 476, 300 S.W. 455. But we all know that in the ordinary case the award of temporary alimony and "suit money" to the wife goes as a matter of course regardless of the final result on the merits; certainly this is true where there is no evidence of the wife's independent financial ability. Burtrum v. Burtrum, Mo.App., 200 S.W.2d 80; Robbins v. Robbins, 138 Mo.App. 211, 119 S.W. 1075. The record justified no conclusion that the refusal of attorney's fees to the wife would have been proper here. The intervenor purported to release all rights to alimony and her dower in at least one substantial piece of real estate for what, essentially, amounted to no consideration. As stated in Frey v. Onstott, 357 Mo. 721, 210 S.W.2d 87, at loc. cit. 93: "'* * * In many such cases a shocking inadequacy of price or of consideration, without more, is held to be evidence of fraud, and courts of equity grant relief, not on the ground of inadequacy of consideration, but on the ground of fraud

shown by the shocking inadequacy of consideration. * * *'" See also 9 Am. Jur. Cancellation of Instruments, § 25, pp. 371, 372; Hudspeth v. Zorn, Mo., 292 S.W. 2d 271; Johns v. McNabb, Mo., 247 S.W. 2d 640. Our courts have consistently considered the fairness of marital settlements where they have come directly in question. Bloss v. Bloss, Mo., 251 S.W.2d 78; Johns v. McNabb, Mo., 247 S.W.2d 640; Gardine v. Cottey, 360 Mo. 681, 230 S.W. 2d 731. We are inclined to the view that if, upon further hearing, there should be no evidence to explain this stipulation, the purported settlement so made is conclusively fraudulent upon the wife.

■ This stipulation borders upon illegality. An agreement to pay a wife if she procures a divorce, by way of facilitating and inducing the divorce, is illegal and void. Silverman v. Silverman, Mo.App., 95 S.W.2d 1237; Gardine v. Cottey, 360 Mo. 681, 230 S.W.2d 731. Allowing the benefit of some possible doubt, in view of the ambiguity of this stipulation, we construe it as an agreement that the payment of attorney's fee and costs was to be made in consideration of the releases and in contemplation of divorce, and not by way of inducing the divorce. Bishop v. Bishop, Mo.App., 162 S.W.2d 332. The stipulation is very crudely worded. Actually, the husband was not paying the wife anything substantial, for a divorce or otherwise, which she was not already entitled to. In any event, considering all the circumstances, the wife did not stand in pari delicto with the husband here, and she would not thus be barred because of any illegality, Gardine v. Cottey, 360 Mo. 681, 230 S.W. 2d 731; and, as said there, we think that public policy would be better promoted by affording her relief.

■ The question of consideration for this stipulation has not been briefed specifically by either party, although the appellant has briefed nearly all other conceivable points. So far as respondents are concerned, they have planted themselves firmly upon their contention that no point concerning dower has been properly preserved in the motion for new trial; they have not touched upon the merits. We think therefore that they may not complain of any ground upon which we decide the merits. The practice of not briefing the merits on a point of substance is not to be commended.

■ Count 2 of the amended intervening petition, being an action for the assignment of dower, is an action at law. § 469.250. The court considered the stipulation by way of estoppel, as he might do in a law action. Intervenor's counsel have misapprehended her proper remedy in their pursuit of her dower rights. Perchance we could rule here that the stipulation was void. For the distinction between "void" and "voidable" see: Loeb v. Dowling, 349 Mo. 674, 162 S.W.2d 875, 877; Jordan v. Missouri & Kansas Tel. Co., 136 Mo.App. 192, 116 S.W. 432. A void contract is a nullity, not even subject to ratification, while ordinarily a voidable contract should be disaffirmed upon some recognized ground in a direct attack. An equitable proceeding directly attacking this stipulation, and combined or not, as so advised, with a claim for the assignment of dower, would certainly be a more appropriate proceeding under these facts. The trial court stated informally, as the basis of his ruling, that if the stipulation was not considered "part of the decree, she [intervenor] would be estopped by it." In its entry of judgment the court did not separate its rulings upon intervenor's two counts, but merely found the issues against her generally, and entered judgment "accordingly." The stipulation, as considered by us in the light of § 510.310, was not sufficient to constitute an estoppel; nor have respondents, standing in the shoes of Williams, changed their positions in any way in reliance upon it. See, generally, Emery v. Brown Shoe Co., Inc., Mo., 287 S.W.2d 761, 766. However, the proper way to try and adjudicate the validity of the stipulation is by a direct attack, with an oppor-

tunity, pro and con, to adduce further evidence, if the parties be so advised.

 Intervenor's "Election To Take Substitute Dower" was improperly excluded. It constitutes a specific statutory election and must be considered for whatever it is worth. Certainly, the "Dead Man's Statute" has nothing to do with its admissibility, or else no widow would ever be able to file such an election. We advance no opinion as to whether it was filed in accordance with the requirements of § 469.-120; and, see concerning the requirements of the statute, Ferguson v. Long, 341 Mo. 182, 107 S.W.2d 7, 11; Colvin v. Hutchison, 338 Mo. 576, 92 S.W.2d 667, 670-671, 105 A.L.R. 266. The duplicate original which we have here shows a recording on September 11, 1954. The court may, upon any future hearing, consider the effect of that election. Since the claim of a resulting trust has been disallowed, any claim to dower will now involve the whole of the property.

This court has, upon suggestion of the death of defendant Anette Holmes Peterson and upon motion, substituted in her place three persons as her heirs. The trial court may verify the adequacy of this substitution. The death of that defendant will necessitate some modification of the interlocutory decree in partition, as may also a further hearing on the question of dower.

The judgment is affirmed in so far as it concerns Count 1 of the First Amended Intervening Petition; as concerns Count 2 thereof, the judgment is reversed and the cause is remanded for further proceedings in accordance with the views herein expressed, with leave to be granted to the parties to amend their pleadings, if they so desire. It is so ordered.

STORCKMAN, P. J., and ELMO B. HUNTER, Special Judge, concur.

LEEDY, J., not sitting.